Argued June 6, 1978, affirmed as modified
June 12, petition for rehearing
denied July 10, 1979

BORDEN, INC., *Appellant,*

*v.*

DEPARTMENT OF REVENUE, *Respondent.*

(TC 1096 (Lane County), TC 1097 (Union County),
Consolidated SC 25337 and 25338)

595 P2d 1372

John C. Caldwell, Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City, argued the cause and filed the brief for appellant.

G. F. Bartz, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief was James A. Redden, Attorney General, Salem.

LENT, J.

## LENT, J.

■ This is a consolidated appeal of two companion[1] cases decided by the Oregon Tax Court. Plaintiff, the owner of two chemical plants, one in Lane County and one in Union County, appealed fruitlessly to the Board of Equalization the assessed valuation assigned to its property, more particularly to the machinery and equipment thereon, by the respective county assessors[2] as of January 1, 1975. Plaintiff then appealed to the Department of Revenue, which revised the assessed valuation downward for the machinery and equipment at both locations. No. VL 76-454. Plaintiff, being still aggrieved, appealed to the Oregon Tax Court which, after trial, affirmed the Department's orders in an unpublished opinion rendered May 26, 1977. *See* OTR Adv. Sh., Vol. 7, No. 2, p. [2]. On plaintiff's appeal to this court we try the case "anew upon the record" made in the tax court, ORS 305.445 and ORS 19.125(3), and we affirm the tax court in substantial part.

The Lane County Plant (Lane Plant) was constructed in 1947, and the Union County Plant (Union Plant) was constructed in 1966. Both were designed and are used for the manufacture of chemicals, including formaldehyde, urea and phenol resins, dry catalysts and wax emulsions.

The machinery and equipment of the Lane Plant was assessed at $2,348,780 as of January 1, 1975. The machinery and equipment at the Union Plant was assessed at $1,293,020 as of the same date. The taxpayer appealed to the Department of Revenue,

---

[1] The two cases involve identical issues varying only in the location and details of the properties involved and the values variously determined by the taxpayer and the Department. They will be referred to in this opinion in the singular and distinguished only when necessary.

[2] The actual appraisal of the two properties was done by the Department of Revenue, Industrial Section, Assessment and Appraisal Division, on behalf of the County Assessor, pursuant to ORS 306.126(1) and OAR 150-306.126(1)-B.

claiming that the true cash value[3] of the machinery and equipment at the Lane and Union plants was $944,500 and $706,700, respectively. The taxpayer claimed the assessor erred in (1) applying a 17-year, rather than an 11-year, economic life to the machinery and equipment, and (2) failing to recognize excessive physical deterioration and special functional and economic obsolescence of the machinery and equipment involved. The Department agreed with the first assertion and reduced the valuations to $1,717,122 and $1,087,234, respectively. The taxpayer's appeal to the tax court and to this court concerns the second contention. In this court plaintiff also contends the tax court erred: (1) in failing to strike the Department's appraisal evidence that the value of the machinery and equipment in question was higher than the value which the Department had assigned in its opinion and order; and (2) in failing to strike the appraisal evidence of the Department on the basis that it included "trending factors" published and used by the Department but not adopted by a formal rule pursuant to ORS chapter 183.

■ With respect to the second point we find from the evidence that neither the Department's appraisers nor any taxpayer's appraisers are bound to follow these trending factors if the appraiser finds them to be inapplicable in any given situation. When the Department's appraiser was asked by plaintiff's counsel whether he felt bound to follow the trending factors, the appraiser said he didn't. As an example he mentioned labor rates in individual trades and said that if he felt a rate wasn't applicable to a particular region, then he wouldn't follow it, but modify it accordingly.

■ We hold that these trending factors, although published in an imposing document entitled "Industrial Cost Indexes and Multipliers for Machinery and

___

[3] ORS 308.205 provides, in pertinent part:
   "True cash value of all property, real and personal, means market value as of the assessment date."
*See also* ORS 308.232 and OAR 150-308.205(A) (1) (a).

Equipment," are not "rules" within the meaning of ORS chapter 183, but are merely a compilation of statistical data in convenient form for the possible use of appraisers; they amount to nothing more than suggestions.

Both parties relied on the cost approach to determine their differing values of the machinery and equipment as of the assessment date. Values of the land, buildings and structures were agreed upon. From data indicating the original cost of each piece of equipment and its date of purchase, the cost new was "trended" to arrive at present cost new. Depreciation, based on the 11-year economic life, was then subtracted from the trended cost new to arrive at the present value. Both parties agreed with this general approach and the resulting values.

The taxpayer, however, asserted that further deduction must be made to account for additional components of depreciation peculiar to the machinery and equipment in taxpayer's plants. The Department, on the other hand, contended that the depreciation deduction based on the reduced economic life accounted for all accrued depreciation and denied the validity of the taxpayer's additional deductions. The tax court agreed with the Department.

The taxpayer asserted that the values arrived at by the Department's appraisal were subject to additional depreciation of 45 percent for the Lane Plant and 35 percent for the Union Plant. The former figure was composed of (1) "excessive physical deterioration" (20 percent) due to (a) the continuous operation of the machinery and equipment, and (b) the corrosive nature of the chemicals used in the manufacturing process; (2) functional obsolescence (20 percent) due to poor plant design and inadequate capacity of some plant elements; and (3) economic obsolescence (5 percent) due to "current trends and technological change

within the industry."[4] The 35 percent Union Plant deduction was generally allocated to functional obsolescence and excessive physical deterioration.

The taxpayer offered two species of evidence to support these deductions. The first, in an attempt to justify the deductions themselves, was in the form of an expert's observations and conclusions. The second, in an attempt to justify the *amount* of such deductions, was in the form of economic data on "excessive operating costs" evident at each of the plants. Such costs came from examples of excessive physical deterioration, functional obsolescence, and economic obsolescence. One example of functional obsolescence was an 11,000 gallon resin reactor, since modern volumes were alleged to be 17,000 gallons. Plaintiff claimed a resulting annual excess operating cost due to increased labor needs associated with the reactor of $31,000 at the Lane Plant. With both plants, plaintiff presented excess costs resulting in greater deductions than represented by the 35 percent and 45 percent deductions. The purpose of the proof of excess costs was not to establish a value but to prove that the percentage estimations were valid because they were conservative. The taxpayer cites *Publishers Paper Co. v. Dept. of Rev.,* 270 Or 737, 530 P2d 88 (1974) and *Reynolds Metals Company v. Department of Revenue,* 258 Or 116, 477 P2d 888 (1971), as cases in which the method of capitalizing excess operating costs to determine the amount of special depreciation was validated. While those cases do validate this method of determining the *amount* of special depreciation, they do not approve its use as support of percentage

---

[4] With regard to the claimed economic obsolescence, the Department appraiser testified that he found the plants to be capable of meeting competition profitably. Plaintiff claimed that pollution regulations, in particular, caused economic obsolescence at the Lane Plant. We note that without deciding whether that does constitute economic obsolescence, plaintiff did not show that its overall net income would necessarily be higher in another location not having such regulations. There were also advantages to these locations, such as proximity to the users of the plants' products.

estimations. In fact, in *Publishers* the court approved an appraisal which used the excess operating costs to measure the exact deduction value rather than an appraisal which used a percentage estimation. Those excess operating costs were then reviewed in detail to determine their authenticity. *See, also, Bend Millwork v. Dept. of Rev.,* 285 Or 577, 608-612, 592 P2d 986 (1979). The excess operating costs here were not adequately shown. For example, with regard to the claimed labor savings, evidence that certain hours are saved on a certain kind of maintenance does not mean that workers would be replaced or that they would not be required to perform other maintenance on replacement equipment. Plaintiff's appraisers did not satisfactorily relate the individual excess operating costs to the 20 percent for functional obsolescence, 20 percent for excessive physical depreciation, and 5 percent for economic obsolescence in the Lane Plant, or to the general 35 percent in the Union Plant.

■ The *Reynolds* and *Publishers* cases also do not address the issue of the existence of special depreciation over and above the accrued depreciation based on economic life. The Department adduced evidence that the depreciation affecting the value of the taxpayer's machinery and equipment was no different than that experienced by other similar chemical plants in the State of Oregon, of which the Department had made a detailed survey. Thus, the Department countered, the individual factors asserted by the taxpayer were accounted for in the Department's use of an 11-year economic life, which was the standard for the industry. Plaintiff in its brief did not directly address this issue, except to point out that the depreciation of its machinery was excessive as "compared to an item in a facility not subject to clogging, congestion and corrosion," such as "a stainless steel tank in a milk processing plant, a brewery or a cannery." Defendant's contention, though, was that the 11-year economic life reflected the typical depreciation of the chemical industry.

Plaintiff did not adequately prove this was not the case.[5]

With regard to some of the claimed excess operating costs, plaintiff points out in its brief to this court that defendant was not even aware of the problems when it made its calculations. Apparently when defendant conducted its new appraisal, the plaintiff's employees were advised by plaintiff's counsel not to discuss the plants' condition with the defendant since they were involved in an adversary proceeding. Plaintiff argues that if defendant wanted any information it could have easily taken depositions. It is not clear, however, why plaintiff's employees did not point out any problems to defendant's appraiser when he was making the original appraisal. The appraiser stated in the Union Plant testimony that in his original appraisal he discussed with the plaintiff's works manager "any features that would be detrimental to the value of this property or of these properties that would not readily be observable by me."

In its brief to the court plaintiff asks that we bind the Department to positions reached by it in a formal administrative adjudication. The Department's evidence of value of the machinery and equipment in question was higher than the value which the Department had fixed in its opinion and order. In fact the Department's appraiser used a different appraisal method, computing not only a reproduction cost value for the plants, but also a replacement cost value and correlating the two values. The Department agrees in its brief to this court that the Department "is bound by its formal findings in its opinions and orders." The Department contends, however, that such opinions and orders "do not prohibit an appraiser from exercising his independent professional judgment as to his

---

[5] Because we decide this case on these grounds, we do not reach defendant's further objection that any excess operating cost deductions should be made from the replacement cost rather than reproduction cost of the plant. For a discussion of the concepts of replacement cost and excess operating costs related to the layout of a plant, *see Bend Millwork v. Dept. of Rev.,* 285 Or 577, 592 P2d 986 (1979).

opinion of value," and that the defendant's appraiser should be free to testify to different findings of value before the tax court, though the Department need not plead them. There was no attempt by the Department to increase the values from the prior determination, which the Department was prohibited from doing by *Bauman et al v. Dept. of Rev.,* 6 OTR 426, 438-440 (1976), since the Department had not pleaded this higher amount. The issue whether the Department may *plead* in the tax court a value greater than that found in its opinions and orders is not before us. *But see* ORS 305.435 as amended by 1977 Or Laws, ch 870, § 30, which apparently makes it unnecessary for the Department to plead a higher amount in order for the tax court to find a higher amount for property subject to special assessment. The evidence of higher value here, determined by the appraisal prepared specially for the tax court, was offered merely to rebut the taxpayer's evidence of values which were lower than those determined by the Department as a result of the initial appraisal. It was not error to receive this evidence.

The apparent reason why a Department's witness would present an appraisal different from the one he or she presented in the Department hearing, even where the Department totally accepts the initial valuation, is that usually the witness does not feel that the initial valuation is as detailed or in-depth as is necessary to prevail in the tax court. As the tax court explained in *Bauman,* 6 OTR at 439, the Department's witness "almost regularly supports his initial position by finding a higher value than that determined at the administrative hearing":

> "This is a temptation easily available to the witness, who must of necessity depend on experienced judgment to make his initial subjective selection of value factors which, in turn, involve infinite degrees. It is always possible for him to select the next degree which will 'strengthen' the proposition that the property is 'certainly worth not less than' the value pleaded in the answer."

■ This tax appeals system necessarily creates some difficulties. As discussed in *Publishers,* 270 Or at 745, the plaintiff has the initial burden in the tax court of producing evidence which, if unrebutted, would establish a valuation different from that found by the Department. If plaintiff is successful, then the Department has the burden of going forward. The initial focus of the plaintiff, then, is showing a valuation less than that found at the Department's hearing. The defendant responds not only by directly refuting plaintiff's arguments, but also by presenting an entirely new appraisal of its own. To the extent such an appraisal directly refutes plaintiff's contentions, the case arguments are easy to follow. However, since defendant is also showing that the value it pleaded is correct by showing it is conservative, it proceeds to prove that its new valuation is correct. The focus of the argument then becomes whether plaintiff's appraisal or defendant's new appraisal is correct. Often, the "credibility" of each side's appraisers becomes a major issue,[6] though at least on the defendant's side its appraiser's "credibility" only relates to his or her new appraisal and not to his or her former appraisal, which was the basis, at least in part, of the Opinion and Order and of the value which was pleaded. The end result, at least apparently before amendment of ORS 305.435, is that if the defendant prevails, its Opinion and Order valuation prevails, not the valuation which the defendant actually presented and argued in the tax court.

■ In addition, at times the defendant can make arguments consistent with the new appraisal but inconsistent with the Opinion and Order. An example in this case is the Opinion and Order finding of an 11-year economic life of the machinery and equipment. In adopting the 11-year life instead of a 17-year

---

[6] This court is not impressed by the overall superior assessor, but by the superior appraisal arguments on individual issues of assessment. While the superior assessor will obviously, by definition, be able to present seemingly better arguments on most issues, that does not mean that all of his or her arguments are correct.

life, the Opinion and Order noted that plaintiff's claimed additional physical depreciation and functional obsolescence were in fact reflected in the selection of the 11-year life. The tax court judge essentially made the same determination. Department's appraiser, though he presented a new appraisal, used the 11-year life found by the Opinion and Order. However, he also recognized an additional $40,000 deduction for functional obsolescence caused by silica affecting the machinery and equipment at the Union Plant and deducted that from the depreciated reproduction cost. That appears to the court to be a party admission that the 11-year life in the Opinion and Order did not in fact include the functional obsolescence, or actually physical deterioration, caused by the silica. Though neither party recognized it as such an admission, we do find that this additional deduction should be allowed, and that the value of the Union Plant is thus $1,047,234. The value of the Lane Plant is as that determined by the tax court, $1,717,122.

Based on our foregoing de novo review of the record, we affirm as modified.