Argued and submitted October 4, reversed December 7, 1982, petition for rehearing denied January 11, 1983

MARTIN et al,
*Respondents,*

*v.*

DEPARTMENT OF REVENUE,
*Appellant.*

(SC 28454, TC 1505)

655 P2d 168

Ted E. Barbera, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief was Dave Frohnmayer, Attorney General.

William B. Wyllie, Salem, argued the cause and submitted the brief for respondent.

PER CURIAM

## PER CURIAM

■ Taxpayers Martin and Martin's Foodliner, Inc. brought suit in the Oregon Tax Court alleging that defendant Department of Revenue misapplied withholding tax payments during the 1971-1975 tax years. Because Martin's Foodliner, Inc. no longer exists, we will refer to Martin only as taxpayer. Martin has standing because he was personally liable for withholding tax payments under ORS 316.207 and ORS 316.162(3).

Martin sought a refund of $3,327.93, interest on the refund, and costs and disbursements, including attorney fees. The Tax Court found there had been an overpayment, awarded $1,850.79 for the overpayment, interest thereon of $680.66, and costs and attorney fees. Department appeals, contending there was no overpayment; that even if there were, the employee rather than the employer should be reimbursed; that costs and disbursements should not have been awarded; and that even if they should have been awarded, the attorney fees award was excessive. We reverse, because we find no overpayment. Because of this decision we do not reach Department's other contentions.

From 1965 to December 1975, taxpayer Martin was the sole owner and manager of taxpayer Martin's Foodliner, Inc. He personally maintained the corporate checkbook and payroll accounts. He employed approximately 16 people at the store and he paid them on an hourly basis each week. As an employer Martin was required to pay to the Department withholding taxes deducted and retained from wages paid to any employe during the preceeding three months. ORS 316.197. These reports and payments were required by the end of April, July, October and January. Taxpayer sent the necessary information for the preparation of the quarterly withholding returns to the accounting department of West Coast Grocery in Tacoma, Washington. That office prepared the returns and mailed them back to taxpayer. He then would sign them and send them to the proper office.

At the end of 1975, when Martin's Foodliner, Inc. ceased business, the Department informed taxpayer he still owed withholding taxes. Taxpayer appealed to the Director

of the Department of Revenue. ORS 305.275(1). The Department made no decision on the appeal within 12 months. Taxpayer therefore brought this suit in the Tax Court. ORS 305.560(5).

Taxpayer alleged that the Department failed to credit a payment of $1,226.10 made in October 1971 for the third quarter of 1971. That payment would include the payroll from July to September and was due by the last day of October. Because of this alleged failure to credit his account, he contends that all withholding tax payments he made from the first quarter of 1972 to the third quarter of 1975 were erroneously applied to a prior quarter. However, the matter is not so simple. Taxpayer alleges paying a total of $30,141.67 over the five year period; the Department claims he paid only $26,697.36.

As the tax judge said, this case is a distressing (and confusing) saga of poor record keeping. The taxpayer presented only 15 cancelled checks, although he claims to have made 30 different payments. He did not write on the face of any check or elsewhere if the payment was for withholding tax or some other type of tax liability. Taxpayer presented no copies of the tax returns themselves, which would have been evidence of which quarter the payments were for. Taxpayer, by his own testimony, was sometimes late with his payments. On the other hand, Department introduced evidence of their computer print-outs, which shows tax payments and returns that were received at the same time. The return itself refers to the quarter for which the payment is intended. The Department offered no original evidence. The original returns had all been destroyed because of a policy of not retaining older records.

The taxpayer has the burden of proof. ORS 305.427. Our review is anew upon the record. ORS 19.125(3); ORS 305.445; *Borden v. Dept. of Rev.,* 286 Or 567, 569, 595 P2d 1372 (1979). We must study the transcript and exhibits in order to reach our own conclusions. *Pacific Power & Light Co. v. Dept. of Rev.,* 286 Or 529, 538, 596 P2d 912 (1979). This is not a case in which we must give great weight to a trial court's fact findings because they are not based on credibility. *Medical Building Land Co. v. Dept. of Rev.,* 283 Or 69, 74 n.3, 582 P2d 416 (1978). No

testimony of fact was contradicted. Taxpayer concluded he must have been making payments earlier than they were due. However, when asked, taxpayer said he had no conscious memory of ever doing so, so it is a matter of deciding the most reasonable explanation, rather than a matter of deciding credibility.

This conflict between the taxpayer and the Department has been going on for a long time. There was a previous audit done the first part of 1975. The records that taxpayer presents to support his claim of overpayment are very confusing. Although there are only 20 tax periods in the five years in question, he claims to have made 30 different payments. He concedes that he often made late payments. He presented no evidence about when he filed the returns themselves. He also evidently made partial payments at times, and there are other checks for penalty and interest assessed by the Department. His explanation of the account requires one to believe he made payments for amounts that were apparently randomly chosen. For instance, on January 31, 1974, taxes were due for the fourth quarter of 1973 amounting to $1,456.06. He made a payment on February 18, 1974 for $1,380.98. He provides no explanation for this inconsistency, except that he would pay overdue notices and penalty and interest assessments as they arrived. The entire record is a veritable quagmire that is difficult to traverse without becoming bogged down in it.

■ The Tax Court made a painstaking, step by step analysis of the transactions that occurred over this five year period. At the conclusion of this, it found that taxpayer had not proven an overpayment of $3,327.93 as he had claimed. The Tax Court found an overpayment of only $1,850.79. We find we must reject even this analysis, however, because it is based on the premise that taxpayer made payments before they were due, and once even before the amount owing could have been figured.

Both the taxpayer and the Tax Court start with the premise that the taxpayer was current in the payment of his withholding tax to the Department at the end of the fourth quarter of 1970. The problems in this case start with a check dated April 15, 1971 in the amount of $1,347.46

from Martin's IGA Foodliner to the Department of Revenue. Both the taxpayer and the Tax Court credited the $1,347.46 to the payment of withholding tax for the first quarter of 1971.

The Department did not credit the taxpayer's withholding tax with the $1,347.46 during 1971 or any subsequent year. The Department's ledger for 1971 in effect shows the following:

| Quarter | Due Date | Amount of Tax | Date Return Filed | Date Payment Made | Amount Paid | Penalty & Interest |
|---------|----------|---------------|-------------------|-------------------|-------------|--------------------|
| First | 4/30/71 | $1,045.70 | 8/02/71 | 8/02/71<br>9/14/71 | $1,045.70<br>246.37 | $246.37 |
| Second | 7/31/71 | 1,226.10 | 11/01/71 | 11/01/71<br>3/08/72 | 1,226.10<br>333.51 | 333.51 |
| Third | 10/31/71 | 1,300.00 | 3/08/72 | 3/08/72 | 1,594.63 | 294.63 |
| Fourth | 1/31/72 | 1,259.00 | 2/01/72 | 2/01/72 | 1,259.00 | |

The taxpayer claims and the Tax Court found that the March 8, 1972 check in the amount of $1,594.63 was an advance payment on the first quarter of 1972. The Department, as shown above, credited the check to $1,300 tax and $294.61 penalty due for the third quarter of 1971. The taxpayer argues that if the $1,347.46 check dated April 15, 1971 had been credited by the Department to the first quarter of 1971, then in effect the amount of tax due for the second quarter of 1971 should have been $1,045.70 and the amount due for the third quarter should have been $1,226.10.

Both the taxpayer and the Tax Court used a "running balance" to reach a result. That is, they treated the taxpayer's withholding account with the Department like a rancher's account with a hardware store and applied the payments to the last balance. They ignored the fact that checks drawn in odd dollar and cent amounts were earmarked as payment of quarterly withholding obligations in the same odd dollar and cent amounts. For example, the Tax Court agreed with the Department that the withholding tax for the first quarter of 1971 was the sum of $1,045.70, but instead of applying a check in that amount drawn on July 30, 1971 in payment, the Court chose to apply the taxpayer's check dated April 15, 1971 in the

amount of $1,347.46. A further cause of confusion is that the taxpayer evidently did not always send the returns and payments to the Department in the proper order. For instance, he sent the return and payment for the fourth quarter of 1971 before that of the third quarter of 1971.

The point is that the taxpayer and not the Department determines the amount of the withholding tax to be paid each quarter. It is the taxpayer who as the employer holds the money as trustee, prepares a return and pays the amount due to the Department each quarter. In this case, it was Martin who, for the first quarter of 1971, withheld $1,045.70 from his employees and then on August 2, 1971 filed a return and a check in that amount with the Department. On September 14, 1971, he paid $246.37 as penalty and interest for the late filing.

Because of the foregoing facts we find that the taxpayer, Martin, intended and did pay the first quarter of the 1971 withholding taxes with his check in the amount of $1,045.70 and that his check dated April 15, 1971 in the amount of $1,347.46 to the Department of Revenue was for some other purpose.[1]

We also find that the check dated March 8, 1972 in the amount of $1,594.63 was properly applied by the Department to the taxes, penalty and interest for the third quarter of 1971. To credit that amount as an advance payment on the first quarter of 1972, the Tax Court had to ignore a check dated July 18, 1972 in the amount of $1,244.40, which was the exact amount of the tax due. Once again the amount of the tax was determined by the taxpayer and the check for $1,244.40 arrived at the Department with the return. It would have been impossible for the taxpayer to be able to assemble the payroll information necessary for the first quarter, ending March 31, send it to Tacoma, receive the withholding return, and file it and the payment before the quarter ended.

For the most part the taxpayer has accepted the Department's determination of the amount of withholding

---

[1] We note that this is the date on which personal income taxes and many corporate taxes are due. This check, like all the checks entered into evidence by taxpayer, did not indicate to which account it should be applied.

tax due for the various quarters, but has objected to the manner in which the Department has applied the payments. Both sets of data have been taken from exhibits which are copies of computer print-outs or documents which were prepared from the print-outs. During the cross-examination of the Department's witnesses, the taxpayer continually criticized the Department for failing to authenticate the payments shown on the exhibits with the original documents. The exhibits had been received in evidence without objection and the original documents had previously been destroyed because of Department policy. At the time of the hearing, in September 1981, some of the original documents would have been ten years old. This tactic was merely an effort by the taxpayer to shift the burden of proof to the Department.

After reading the testimony, examining the exhibits and reconstructing the analyses presented by taxpayer, the Department and the Tax Court, we independently conclude that taxpayer has not met his burden of proof in asserting a claim for overpayment of withholding tax.

Reversed.