# IN THE OREGON TAX COURT

## BORDEN, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 1933)

John C. Caldwell, Hibbard, Campbell, Bowerman, Schultz & Hergert, P.C., Oregon City, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision part for plaintiff, part for defendant rendered February 7, 1985.

### EDWARD H. HOWELL, Judge Pro Tem.

The plaintiff appeals defendant's determination of the true cash value as of January 1, 1976, through 1980, of the machinery and equipment plus the buildings and structures at its Springfield, Oregon, plant and the machinery and equipment at its Island City Union County plant. The basic function of both chemical plants is the production of aqueous

formaldehyde which, when combined with reactive ingredients, results in products which are used by wood products industries in the manufacture of hardboard, plywood, and similar products.

The plaintiff's estimate of true cash value of the machinery and equipment (M & E) and buildings and structures (B & S) at the trial is widely divergent from that found by the defendant in its opinion and order:

SPRINGFIELD

| Tax Year | | Plaintiff's Values | Defendant's Values |
|----------|--|-------------------|--------------------|
| 1976-77 | (M & E) | $1,020,000 | $2,545,770 |
| 1977-78 | (M & E) | 914,000 | 2,941,560 |
| 1978-79 | (M & E) | 896,000 | 3,103,310 |
| 1979-80 | (M & E) | 968,000 | 3,179,650 |
| 1980-81 | (M & E) | 733,000 | 2,776,340 |
| | | 910,000 | $1,360,460 |

ISLAND CITY

| Tax Year | | Plaintiff's Values | Defendant's Values |
|----------|--|-------------------|--------------------|
| 1976-77 | (M & E) | $629,000 | $1,749,077 |
| 1977-78 | (M & E) | 513,000 | 1,815,284 |
| 1978-79 | (M & E) | 379,000 | 1,873,326 |
| 1979-80 | (M & E) | 307,000 | 1,919,410 |
| 1980-81 | (M & E) | 481,000 | 1,999,880 |

## MACHINERY AND EQUIPMENT

The parties agreed that the cost approach was the proper method to employ in estimating true cash value but disagreed on the age-life of the M & E and on the extent of functional obsolescence.

In a determination of the true cash value of the plaintiff's machinery and equipment in a previous appeal concerning the assessment dated January 1, 1975, the year directly preceding the first year of this appeal, the defendant found an 11-year life was an appropriate life for the subject property and both the Tax Court and the Supreme Court affirmed the defendant's conclusion.[1] A determination of value for one year

---

[1] In the case involving tax year 1975 the appraisal was made by the department's industrial section for the county. The appraiser used a 17-year life. In the hearing before the Department of Revenue, the department disagreed with its industrial appraiser in his use of a 17-year life and adopted the 11-year life urged by plaintiff. On appeal, the Tax Court agreed and affirmed the 11-year life. *Borden, Inc. v. Dept. of Rev.*, Nos. 1097 and 1096, slip opinions (May 26, 1977). The Supreme Court affirmed.

is not conclusive as to the value of the same property in a subsequent year. *Mittleman v. Commission,* 2 OTR 105 (1965).

■        However, the defendant's appraiser clings to a 17-year age factor in spite of the above decisions with little explanation of any difference in circumstances to support that theory. Defendant employs a declining-balance depreciation factor. The plaintiff continues to employ an 11-year life with straight-line depreciation for the M & E in its valuation formula.

The plaintiff's appraiser testified that his estimate of physical life was based in part on a Marshall Swift cost reference which uses an 11-year life. As additional support for an 11-year life, the plaintiff offered a summary of valuation of the machinery and equipment of chemical plants for ad valorem tax purposes. The summary, involving 18 "key states," shows a physical life assignment ranging from 8 to 14.8 years, with the average life being 10.9 years. Two-thirds of the states in this study employed a straight-line depreciation.

The defendant contended that the Marshall Swift reference, indicating an 11-year life for M & E, was based on an Internal Revenue Service guideline developed for income tax reporting and adopted by Marshall Swift. The defendant's appraiser for the Springfield plant testified that while he embraced an 11-year life concept for the machinery and equipment in his appraisal dated December 21, 1979, he revised his estimate in 1981 based upon data involving the plaintiff's figures for capital expenditures and retirements.

The plaintiff rebutted the defendants theory with testimony that many items which are routinely replaced are "expensed" and not treated as a capital expenditure.

Defendant's assertion that a 17-year life for the M & E is indicated is considerably weakened due to the significant number of expenditures not considered by the defendant because of plaintiff's method of accounting. The court accepts the plaintiff's estimate of an 11-year life for the machinery and equipment.

---

*Borden, Inc. v. Dept. of Rev.,* 286 Or 567, 595 P2d 1372 (1979). In the instant case the industrial appraiser again used the 17-year life despite the previous adverse decisions from the department and the Tax Court. The Department of Revenue again has adopted the 11-year life.

The defendant asserts that a declining-balance depreciation factor should be used because, in reality, physical items depreciate in a curve with the greatest amount of depreciation occurring early in the life of the item. Testimony was received that the equipment in the Springfield plant has all been replaced at varying times. Not one major piece of equipment that was there in 1957 remains. Due to the high operating temperatures, the corrosive materials involved, and safety requirements, programmed maintenance and continual repair and replacement is required in order for the plant to operate. In the instant case, the facts presented indicate that a straight-line depreciation factor is more realistic than the defendant's declining-balance method.

The other major source of disagreement between the parties is the treatment of functional obsolescence. The plaintiff's claim of functional obsolescence is based on the disadvantage of the silver catalyst process used at both plants versus a mixed oxide process. The plaintiff's witness asserted that increased costs due to lower yields and greater fuel costs of the silver process, as compared with a mixed oxide process, resulted in functional obsolescence of over $1 million for the Springfield plant and over $384,000 for the Island City plant.

Based upon this estimate of functional obsolescence, plaintiff concluded that the true cash value of the machinery and equipment at its operating Springfield plant was $733,000 in 1980. However, plaintiff paid approximately $1 million for the machinery and equipment of a silver process plant in plaintiff's area and removed the machinery and equipment to another location.

In addition, it was unrefuted that when plaintiff built the Island City plant there were plants operating in Oregon using the mixed oxide process and yet the plaintiff chose to use the silver process. The latest new plant in Oregon was built in 1975 by Chembond. At the time, Chembond owned a plant using a mixed oxide process yet it selected the silver process for its new plant. In the face of such business decisions, the court is not persuaded that there is an advantage of the mixed oxide process that will support the plaintiff's asserted deduction for functional obsolescence.

The court accepts the defendant's estimates of value of the machinery and equipment for the subject years as listed

on page two of this Opinion, with an adjustment for an 11-year age-life, using straight-line depreciation.

Pursuant to Tax Court Rule 67, entry of judgment will be withheld to permit the defendant to recompute its estimates of value based upon an 11-year life for the M & E, using straight-line depreciation, instead of 17 years, and submit the result to the plaintiff for agreement.

## BUILDINGS AND STRUCTURES

The remaining issue for resolution is the true cash value of the buildings and structures at the Springfield plant. This issue was treated superficially by both parties. Little testimony was given in explanation of plaintiff's and defendant's conclusions of value. Both the plaintiff and defendant employed a reproduction cost new approach to value. Before any deductions were applied, plaintiff's and defendant's estimates of reproduction cost were slightly more than 10 percent apart, defendant's being the lower estimate. Neither party gave more than cursory support for the depreciation factors deducted.

ORS 305.427 places the burden of proof on the appealing party. Under the circumstances, the court must rule against the plaintiff and accept defendant's conclusion that the true cash value of the buildings and structures at the Springfield plant on January 1, 1980, was $1,360,000.