DECISION
Plaintiff appealed from an order of the county board of property tax appeals (Board) sustaining the value of his home for the 2008-09 tax year. The property is identified as Account 01760972. Plaintiff was unrepresented at the trial held May 3, 2010, and appeared on his own behalf. Defendant was represented by Fred Dodd (Dodd), Appraiser II, Clackamas County Assessor's office.
 I. STATEMENT OF FACTS
The subject property is Plaintiffs personal residence in Lake Oswego. The home is a common-wall single-family townhouse built in 1997, and sits on a flag lot that is slightly less than 50 feet wide and 100 feet deep (4448 square feet). (Def s Ex A-1.) Plaintiff owns the home and the land.
The structure is a two-story home off Bullock Street and adjacent to Highway 43, which is one of the main thoroughfares in the town.[1] (Id) There is 960 square feet of heated living space on the first floor and 1160 square feet on the upper level. (Id) There is an additional 264 square feet of space at the rear of the home off the kitchen that was converted by the previous owner from a garage to additional space. Plaintiff testified that the conversion involved merely *Page 2 
replacing the garage door with a window, but that nothing further was done; the room still has only a concrete floor and the space is unheated. Plaintiff testified that the space is used for additional storage. Defendant could not confirm the information about the converted garage because Plaintiff did not allow an interior inspection of the home. Finally, there is a 450 square foot detached garage. (Id.)
Plaintiff remodeled the home in 2007 and 2008, adding approximately 500 square feet of living space, by extending the living room on the ground floor and enlarging an upstairs bedroom. Plaintiff reports spending approximately $55,000 on the remodel. Plaintiff testified that the remodeling commenced on or about November 2007 and was completed around April 2008.
The real market value (RMV) on the assessment and tax rolls is $528,955, with $137,345 allocated to the land and $391,610 to the structures (home and garage). (Ptf's Compl at 3.) There is $57,170 of "exception" real market value[2] (exception RMV) on the rolls that Defendant attributes to the value added to the property as of January 1, 2008 by the remodel at 70 percent complete. Defendant added an additional $24,380 of exception RMV for the 2009-10 tax year to represent the added value of the final 30 percent of the remodel. Plaintiff disputes Defendant's percentage completion estimate. The maximum assessed value (MAV) of the subject property is $251,403. (Id.) Because that number is less than the subject's RMV, the assessed value (AV) is $251,403. Plaintiff appealed the values to the Board, and the Board sustained the assessor's values. (Id.) *Page 3 
At trial, Plaintiff requested a reduction in the RMV to $360,000. Defendant requested that the court sustain the values on the rolls.
 II. ANALYSIS
A. RMV
The issue in this case is the RMV of Plaintiff's property as of January 1, 2008.[3] ORS 308.205(1)[4] defines real market value as:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
"The value of property is ultimately a question of fact * * *."Chart Development Corp. v. Dept. of Rev., 16 OTR 9, 11 (2001). "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct RMV. Richardson v. Clackamas CountyAssessor, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). While properties may be similar, and therefore referred to as "comparables," they are rarely if ever identical to the subject property, necessitating adjustments to account for the differences between the comparable properties and the property being appraised (the subject property). See Ward v. Dept. of Revenue,293 Or 506, 511, 650 P2d 923 (1982) (citations omitted) (noting that the comparable sales approach is well accepted, but that adjustments must be considered to reflect differences "[b]ecause sales are seldom comparable in every detail"); Appraisal Institute, The Appraisal of Real Estate 307 (13th ed 2008) (noting that adjustments for differences must be made because comparable properties are rarely identical). *Page 4 
In the Tax Court, the party seeking affirmative relief has the burden of proof and, initially, the burden of going forward with the evidence. ORS 305.427. Under ORS 305.427, the burden of proof is a "preponderance" of the evidence, which has been defined by the courts as "the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971);see also Riley Hill General Contractor v. Tandy Corp.,303 Or 390, 394, 737 P2d 595 (1987) (" `Preponderance' derives from the Latin word `praeponderare,' which translates to `outweigh, be of greater weight'"). Plaintiff bears the burden in this case because he is the one seeking a reduction in the value set by the Board.
1. Plaintiff's Evidence
Plaintiff has three forms of evidence to support his case. First, in March 2008 a neighbor on 907 Bullock Street tried to sell his freestanding home, which has more bedrooms and sits on a larger lot, for $499,000. That home finally sold in the summer of 2009 for $316,000. That home sits in front of Plaintiff's, directly on Bullock Street, creating the flag lot on which Plaintiff's home sits. Plaintiff further testified that that home has mountain views whereas Plaintiff's home lacks such views because of its location on the flag lot behind that home.
Plaintiff's second piece of evidence is the sale of a nearby two-story stand-alone home on Ash Street, roughly six houses away from Plaintiff's, on a large one-half acre lot that sold for roughly $400,000. Defendant confirmed that that property sold in February 2009 for $409,000. Defendant did not dispute the size of the lot or the general description of the home. However, Dodd testified that the February 2009 sale for $409,000 was a "bank" sale, and that the property sold five months earlier in September 2008 for $688,500. Plaintiff responded that that was a "weird" deal because the owner never left the home. *Page 5 
Plaintiffs third piece of evidence is the appraisal of the adjoining common-wall home, the value of which was estimated by an independent fee appraiser to be $325,000 as of January 22, 2009. Plaintiff submitted that appraisal into evidence as part of his case-in-chief.
One of Plaintiff s main contentions is that the excessive noise caused by passing vehicles on nearby Highway 43 greatly reduces the value of his property and that other alleged comparable sales of homes not located on a busy street are, thus, not comparable.
2. Defendant's Evidence
Defendant valued Plaintiffs home based on the sale of three comparable stand-alone (i.e., non-common-wall) homes and four common-wall homes deemed similar (or comparable) to the subject. Dodd testified that his adjusted sale prices bracket the value of the subject property and support the values on the roll.
Defendant's three stand-alone homes sold for $599,000, $530,000, and $485,000, respectively. (Def s Ex A-2.) The first of those three sales occurred in March 2007, the second in August 2008, and the third in April 2008. Defendant's adjusted sale prices are $542,320, $626,100, and $505,035, respectively. (Id.) Defendant's four common-wall comparables sold for $600,000, $645,000, $550,000, and $565,000. (Def s Ex A-7.) All of those sales occurred between June and September 2007, and were therefore within several months of the January 1, 2008, assessment date. (Id.) Defendant's adjusted sale prices for those common-wall sales are $537,100, $565,840, $478,580, and $522,050 as of January 1, 2008. (Id.) As stated above, Defendant is asking that the court sustain the RMV on the rolls at $528,955, and Plaintiff is seeking a reduction to $360,000.
3. Court's Analysis and Determination
After careful consideration, the court finds Plaintiffs evidence unpersuasive. The nearby *Page 6 
sale of the freestanding home at 907 Bullock Street for $316,000 occurred in the summer of 2009, which was approximately 18 months after the applicable assessment date. That property was originally listed in March 2008 (only several months after the January 1, 2008 assessment date) for $499,000. According to Defendant's written narrative, the market was declining at a rate of 0.75 percent per month. Adjusting the original $499,000 asking price for one month (499,000 x 1.075) results in a value estimate of approximately $536,500.[5] The eventual $316,000 sale in the summer of 2009 is too remote to have much relevance. However, an adjustment of only seven months results in an estimated value of approximately $524,260, [6]which is very close to the $528,955 RMV on the rolls as of January 1, 2008. Plaintiff's Ash Street sale at $409,000 in February 2009 is also remote from the assessment date and, with slight adjustments to account for the falling market, undercuts Plaintiff's case. Moreover, the uncontroverted testimony is that that property sold in September 2008 for just under $690,000, a figure well above the disputed roll value. Finally there is Plaintiff's appraisal of the adjoining common-wall home, which provides an estimate of $325,000 as of January 22, 2009. Again, that appraisal is also remote from the assessment date and, when adjusted for "time," tends to support the current roll value. Moreover, that property is smaller than the subject. Accordingly, the court finds no support for a reduction in the RMV on the rolls.
B. Exception RMV
Defendant had an appraiser visit the property on January 30, 2008. That appraiser determined that the remodel work was 70 percent complete. Based on that determination, *Page 7 
Defendant added $57,170 as exception RMV. As indicated in footnote 2 above, exception RMV is important because under Oregon's rather unusual property tax system, absent certain changes to the property identified in the statute, the MAV of a given property cannot increase by more than three percent per year. ORS 308.146(1), Or Const, Art XI, § 11(1)(b). Moreover, a property's AV is the lesser of the RMV or MAV. In this case, as with most owner-occupied residential properties, MAV is less than RMV; as a result, AV is based on MAV. ORS 308.146(2). When there is new property or new improvements to property (e.g., a remodel), a percentage of the additional value attributable to the new property is added to 103 percent of the property's existing prior year MAV, typically resulting in an increase in MAV in excess of three percent.[7]
Plaintiff disagrees with Defendant's determination of the extent of work completed on the assessment date, asserting that the remodel was only between 25 percent and 30 percent complete as of January 1, 2008. In support of that estimate, Plaintiff testified that the concrete foundation had been poured and the framing completed, but that there was no wiring or plumbing, and a tarp covered the structure because there was no roof at that time.
Plaintiff acknowledges that the remodel added value to the property, but testified that any added value was more than offset by the general decline in real estate values, so that, in the end, the value decreased over the previous year.
There is no documentation to substantiate the progress of the remodel, and thus the percentage complete on January 1, 2008. Dodd testified that an appraiser from the assessor's office was there at the end of January 2008, and made his determination regarding the percentage *Page 8 
of completion after talking with Plaintiff. Dodd could not elaborate on that appraiser's analysis or reasoning. In this state of the record, it is difficult for the court to know what the "true" percentage of completion was. As for the value attributable to the work underway, there is no evidence whatsoever before the court. Because Plaintiff has the burden of proof, and has failed to submit any value evidence pertaining to the remodel, the court concludes that the exception RMV determined by the assessor and sustained by the Board should remain undisturbed.
 III. CONCLUSION
The court concludes that Plaintiff has failed to establish an error in the record assessment of the property by a preponderance of the evidence and that the values on the rolls should be sustained. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and the roll values are sustained.
Dated this day of June 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This Decision was signed by Magistrate Dan Robinsonon June 30, 2010. The court filed and entered this Decisionon June 30, 2010.
[1] Highway 43 is apparently located behind the subject property.
[2] "Exception value" is a term used to identify property added to the assessment and tax rolls for the current tax year that results in an addition to both RMV and Maximum Assessed Value (MAV), and anexception to the typical constitutional and statutory cap of three percent on annual increases to MAV. ORS 308.146(1) (providing for annual three percent MAV increases); Or Const, ArtXI, § 11(1)(b) (generally capping annual MAV increases to three percent over the prior tax year); ORS 308.146(3) (providing an alternate method for determining MAV for new property that has come to be known as exception value).
[3] January 1, 2008, is the assessment date for the 2008-09 tax year. See generally ORS 308.007.
[4] All references to the Oregon Revised Statutes (ORS) are to 2007.
[5] The adjustment is a positive one rather than a negative adjustment because of the declining market that suggests that the home would have been worth more several months earlier. And, the adjustment should be for at least two months to bring it back to January 2008.
[6] The summer 2009 sale for $316,000 multiplied by 1.075 per month for seven months results in a trended sale of $524,260 (rounded).
[7] Under ORS 308.153(1), when there is new property, the prior year's MAV is increased by the statutory three percent, and then the product of the market value of the new property multiplied by a statutorily prescribed ratio (average MAV over average RMV) is added to that number. ORS 308.153(1). As applicable to this case, Defendant's $57,170 exception RMV was multiplied by the applicable ratio, and then added to 103 percent of the prior year's MAV.