Argued and submitted June 7, affirmed September 21, 1982

# WARD et ux,
*Appellants,*
*v.*
# DEPARTMENT OF REVENUE,
*Respondent.*

(SC 28228)

650 P2d 923

Carlisle B. Roberts, Judge.

Gary D. Allen, Salem, argued the cause and filed the brief for appellants.

G. F. Bartz, Assistant Attorney General, Tax Section, Salem, argued the cause for respondent. With him on the brief was David B. Frohnmayer, Attorney General, Salem.

TANZER, J.

## TANZER, J.

Plaintiffs-taxpayers challenge a county assessor's valuation of their real property for ad valorem tax purposes. The subject property is a 26-acre parcel of real property which includes 20 condominium units and a number of undeveloped tax lots. This appeal concerns only the assessor's valuation of a 14-acre (10 tax lots) undeveloped portion of the parcel. The Tax Court found that plaintiffs had not established that the fair market value of the tract in question was different than the assessed value and upheld the valuation by the Department of Revenue. Plaintiffs appeal contending that on de novo review (*see* ORS 305.425(1) and 305.445) we should compute the fair market value of the 14-acre tract by the price which they had recently paid for the entire 26-acre parcel subtracting the undisputed assessed value of the remainder of the parcel.

In 1976, First Federal Savings & Loan Association acquired title to the 26-acre parcel through foreclosure of a mortgage loan. It had the property appraised and set a selling price of about $500,000 for the entire 26-acre parcel. The property was never listed for sale, but real estate brokers, developers and investors in the area knew it was available. Just prior to plaintiffs' purchase of the parcel, First Federal agreed to sell it to another buyer for $525,000, but the buyer could not raise the down payment.

Plaintiffs agreed to purchase the parcel in January, 1978, and consummated the sale in June, 1978, for $500,000. Financing arrangements were ordinary, and there is no indication that First Federal was under any compulsion or pressure at the time to sell the property. Plaintiffs' purchase of the property appears to have been a voluntary *bona fide* arm's-length transaction between a knowledgeable and willing buyer and a willing seller.

In April, 1978, the county assessor assessed the taxable units comprising the parcel at a total of $600,000, $100,000 more than the purchase price. First Federal and plaintiffs petitioned the local board of equalization for review of the assessment. When the board sustained the assessment, plaintiffs petitioned the Department of Revenue for review as to only the undeveloped 14-acre tract. Plaintiffs did not challenge the value assigned to the other

12 acres. After considering some recently imposed development restrictions, the department reduced the total assessed valuation of the 14-acre tract from $167,080 to $154,860.

Plaintiffs then appealed to the Tax Court contending that, subtracting the undisputed assessed value of the 12-acre parcel from the purchase price of the total, the value of the remaining 14-acre tract should be only $58,350. Plaintiffs' only witness as to the tract's value before the Tax Court was Mr. Ward, one of the plaintiffs. He claimed no expertise in the valuation of real property and testified principally as to the nature of the property and the circumstances of the sale as described above. The department called the only appraisal expert to testify, the county assessor. He had appraised only the 14-acre tract. Based on an examination of the physical, legal, and economic characteristics of the property and an analysis of recent sales of comparable properties within the area, he concluded that the tract's true cash value was approximately the assessed value. The Tax Court reasoned that one sale was not persuasive evidence of market value and that plaintiffs' arithmetic approach therefore failed to persuade the court by a preponderance that the defendant's order was incorrect.

■ We must make that determination anew. The issue is the property's "true cash value," that is, its "market value * * * as of the assessment date." ORS 308.205.[1] As the parties challenging the validity and correctness of the assessment, plaintiffs have the burden of proving a valuation different from that found by the department or of proving that the challenged assessment is incorrect. *See* ORS 305.427; *J.R. Widmer, Inc. v. Dept. of Rev.,* 261 Or 371, 494 P2d 854 (1972); *see also, Borden, Inc. v. Dept. of Rev.,* 286 Or 567, 576, 595 P2d 1372 (1979). As noted, plaintiffs' sole evidence of the subject property's value is

---

[1] The department's regulations define "market value" as:

"Market Value as a basis for true cash value shall be taken to mean the highest price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell or buy and are able, willing and reasonably well-informed." OAR 150-308.205-(A)(1)(a).

the price paid for the entire 26-acre parcel, less the value of the 12-acre tract. They contend that this is sufficient evidence to satisfy their burden of proof. In addition, plaintiffs, without offering their own comparable sales market analysis, seek to discredit the department's by arguing that the sales and properties upon which its valuation was based are not sufficiently comparable.

■ The agreed price in a voluntary arm's-length sale of the assessed property, contemporaneous with the assessment, between a knowledgeable and willing buyer and seller is persuasive evidence of the property's market value. *Sabin v. Dept. of Rev.,* 270 Or 422, 426-427, 528 P2d 69 (1974); *Equity Land Res., Inc. v. Dept. of Rev.,* 268 Or 410, 415, 521 P2d 324 (1974); *Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973). As this court emphasized in *Kem,* however, such a sale "is not necessarily determinative of market value and does not foreclose other methods of valuation." 267 Or at 115. *See* Annot., 89 ALR3d 1126 (1979). Accordingly, we hold that proof of a recent arms-length sale of the whole, minus the agreed value of an excluded part, is legally sufficient to prove fair market value in the sense that plaintiffs would survive a motion equivalent to a motion for nonsuit. The next question, however, is whether we are persuaded as fact finders by such evidence. To answer that, we look to all the evidence.

■ We are not persuaded by plaintiffs' formula (recent sale price minus assessed value of excluded 12 acres). In real estate, the value of the whole is relevant to the value of a part, but it is not necessarily determinative. The market value of a large parcel does not necessarily equal the sum of the market value of the parts into which that parcel may be divided or subdivided because smaller parcels may be more readily marketable. We find this testimony by the defendant's appraiser convincing:

> "Well, generally speaking, all else being equal, a number of small parcels making up a large parcel, if they were sold individually, they would bring a higher per unit price on the market than would a large piece. This is owing to their liquidity. It's easier to dispose of a smaller parcel than a large parcel and a buyer is typically less willing to pay higher units *[sic]* for larger sized parcels."

Plaintiffs' evidence of the value of the undivided whole is strong, but their formula for determining the value of the 14-acre part does not take into account the distinction in marketability of larger and smaller parcels. Nor does it take into account that a hypothetical division of the property may be considered in determining the highest and best use of the property as a measure of true cash value, *see Sabin v. Dept. of Rev.*, 270 Or 422, 425-26, 528 P2d 69 (1974). Defendant's comparable sales analysis does take these distinctions into account. We therefore find the latter to be more persuasive.

■ ■ Plaintiffs argue that we should reject defendant's evidence of value extrapolated from comparable sales because they were not sufficiently comparable and the necessary adjustments were so great as to diminish the reliability of the appraiser's opinion. The comparable sales approach to valuation is well accepted, *Chapin v. Dept. of Rev.*, 290 Or 931, 936-937, 627 P2d 480 (1981), and, to the extent the property has a significant ascertainable market, it has been the preferred method, *Portland Canning Co. v. Tax Com.*, 241 Or 109, 113, 404 P2d 236 (1965). Because sales are seldom comparable in every detail, adjustments must be considered which reflect differences. *J.R. Widmer, Inc. v. Dept. of Rev.*, 4 OTR 361, 366 (1971), *aff'd* 261 Or 371, 494 P2d 854 (1972). If the differences and the adjustments are too great, the sale will not be considered comparable, *see, Bend Millwork Co. v. Dept. of Rev.*, 285 Or 577, 592, 592 P2d 986 (1979); *Medical Building Land Co. v. Dept. of Rev.*, 283 Or 69, 78, 582 P2d 416 (1978).

■ Here, the sales used in the comparison ranged in price from $15,000 to $40,000 per acre and involved properties ranging in size from 2.6 to 7.7 acres. Making adjustments for time of purchase, location, size, developable area, and topography, the appraiser opined a fair market value per acre of the 14-acre parcel of about $13,000. The adjustments are substantial, but not so great as to discredit the opinion or rob it entirely of probative value. It would serve no purpose to set out the details on these pages. It is sufficient to say that we, as fact finders, find the appraisal analysis credible and plaintiffs' evidence of the value of the whole unpersuasive as to the value of the part. Because plaintiffs' proof does not take into account the difference

between the value of parts of property and the aggregate and because defendant's comparable sales analysis does so and is not successfully discredited, we find that plaintiffs have not carried their burden of persuasion that defendant's determination of fair market value is wrong.

The Tax Court and Department of Revenue Order No. VL 79-597 are affirmed.