DECISION
Plaintiffs appeal the real market value and assessed value assigned to their home, identified as Account R199801, for tax year 2007-08. Trial was held on July 9, 2008. Kenneth L. Krebs and Candace L. Krebs appeared on their own behalf. Alan Kind, county appraiser, represented Defendant.
 I. STATEMENT OF FACTS
The subject property consists of a single-family residence and the land supporting it. It is located at 3341 SW Cascade Terrace in Portland. The structure was built in 2006, has three bedrooms and three baths, and measures to 3,380 square feet. For the 2007-08 tax year, Plaintiffs appealed to the Multnomah County Board of Property Tax Appeals (BOPTA) and received a reduction in the property's real market value (RMV) and maximum assessed value (MAV). The parties hold the following valuation positions:

 Land RMV Improvments RMV Total RMV MAV
Tax Statement $254,000 $644,880 $898,880 $418,620
BOPTA $224,000 $582,520 $806,520 $369,580
Complaint $147,620 $562,180 $709,800 $330,554
 *Page 2 
At trial, Plaintiffs presented evidence of two comparable bare land sales within the same subdivision. Sale #1 was a 2005 sale of a 11,272 square foot lot for $200,000, an average of $17.74 per square foot. Sale #2 was of a 8,846 square foot lot for $165,000, an average of $18.65 per square foot. No adjustments for comparability were made to either property. (Ptfs' Ltr at 18, July 23, 2008.) Plaintiffs request relief to $18.20 per square foot using the average amount. That, then, was subtracted in the final analysis to leave a residual improvement amount.
Plaintiffs offered details of three improved property sales in the neighborhood. The home adjacent to the subject sold for $785,000. Two more sales on the same street sold for $705,000 (7,804 square foot lot with a 3,398 square foot home) and for $847,500 (7,263 square foot lot with a 4,342 square foot home). Those improved properties yielded an average of $210 per square foot. No adjustments were made. That process yielded $709,800 for the subject property, including improvements. (Id.)
Plaintiffs produced a summary of cost details related to constructing the residential structure. The total was $525,952. (Ptfs' Ltr at 2, May 9, 2008.) Defendant's cost build-up approach from an unnamed database yielded $597,000. (Def's Ex B-1.)
Defendant's trial exhibits establish that the lot's onsite development costs were set at $10,000; Plaintiffs do not dispute that level. Defendant presented several property sales. All were adjusted for differences and comparability by the county appraiser. *Page 3 
 II. ANALYSIS
The issue here is the real market value of the subject property as of January 1, 2007. ORS 308.205(1)[1] defines real market value as:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
The court looks for "arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct RMV. Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 *3 (Mar 26, 2003).
The RMV at issue consists of an allocation between land and structures. As to the improvements, the values urged at trial are within about $20,000 — about 3.5 percent — of each other. Such a narrow range is difficult to adjudicate.
The parties' major differences lie in the valuation of the underlying land. In evaluating the competing evidence, the court looks to the comparability of the different sales and the application of all necessary adjustments for differences. Adjustments are a key component in evaluating properties. According to The Appraisal of RealEstate, (Appraisal Institute 307 (13th edition, 2008)):
 "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences."
Raw, unrefined price information is not enough. Similarly, the process of averaging numbers tends to discount the most comparable and accent the dissimilar. As Defendant notes, *Page 4 
Plaintiffs look to lot size only and ignore other critical attributes such as shape, slope, topography, view, access, and zoning. Defendant made all necessary adjustments to its sales, both improved and unimproved.
Plaintiffs' requested relief at $210 per square foot is the product of averaging both land and improvements from three sales. Instead of including both property components in the mathematical process, the preferred approach is to account for individual differences separately for land and structures.
Informed buyers consider a number of factors relevant in an arm's-length transaction, including size, location, year of construction, and condition of the premises. See ORS 308.205. Valuing a property based on sales of comparable properties is "well accepted."See Ward v. Dept. of Revenue, 293 Or 506, 511, 650 P2d 923, 926 (1982) (citations omitted). However, "[b]ecause sales are seldom comparable in every detail, adjustments must be considered which reflect differences."Id. (citations omitted).
Here, adequate market-supported adjustments have not been offered. Although that does not make Plaintiffs' raw sales data unreliable, it does render that valuation process incomplete. The more refined analysis is that contained in Defendant's work product.
Plaintiffs have the burden of proof and must establish their case by a "preponderance" of the evidence. See ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." Reed v. Dept. of Rev., 310 Or 260, 265,798 P2d 235 (1990). Plaintiffs have not met that statutory requirement in this record. *Page 5 
 III. CONCLUSION
The court concludes that Defendant has supported the record valuations. Now, therefore,
IT IS THE DECISION OF THIS COURT that the appeal is denied.
Dated this _____ day of November 2008.
If you want to appeal this decision, file a complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your complaint must be submitted within 60 days after the date of thedecision or this decision becomes final and cannot be changed.
 This document was signed by Magistrate Jeffrey S. Mattson on November28, 2008. The Court filed and entered this document on November 28,2008.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005.