DECISION
This is a property value appeal for the 2007-08 tax year, involving two tax lots. Trial was held September 17, 2008. Plaintiff appeared on his own behalf. Defendant was represented by Jeff Sanders, Real Property Appraiser II, Multnomah County Assessor's office. Plaintiff filed a separate appeal for each tax lot. The appeals were heard together in a single trial, and the court is consolidating the two cases for decision.
 I. STATEMENT OF FACTS
Plaintiff has appealed the value of two separate tax lots — Accounts R106526 and R581367 — for the 2007-08 tax year. Account R106526 is an improved property with a 1216 square foot ranch-style home built in 1962, that has a 646 square foot daylight basement. The home has three bedrooms, two bathrooms, and an attached two-car garage. Account R581367 was a 0.38 acre unimproved lot on the January 1, 2007, assessment date.
In 2002, Plaintiff purchased both lots for $270,000 as a combined tax lot (a single tax account) that included the house. Actually, at the time of Plaintiff's purchase, there were two lots carried on a single tax account "divided by a dotted line" In 2006, he divided the parcel of land into two separate tax lots. According to the sworn testimony, that action entailed two separate events. On April 12, 2006, there was a "lot segregation" that re-established the existing *Page 2 
lot line, resulting in there being two lots of record. Then, on April 20, 2006, Plaintiff had the lot line moved because the deck on the existing house lacked a sufficient setback (from the other lot). As a result of that second action, Plaintiff increased the size of the second undeveloped lot (Account R581367).
Defendant determined that the second event constituted a lot line adjustment, which resulted in a change to the property, warranting a redetermination of the maximum assessed value (MAV) of both lots.
The values currently on the assessment and tax rolls for the two accounts, as adjusted by the county board of property tax appeals (board) are as follows: the combined real market value (RMV) of the two accounts is $514,250, with $392,250 allocated to the improved account (R106526) and $122,000 to the land-only account (R581367). The combined MAV and assessed value (AV) is $236,030, with $173,090 allocated to the improved account and $62,940 to the unimproved account. Plaintiff has requested that the combined RMV for the two accounts be reduced to $400,000. Plaintiff also expressed some disagreement with the creation of a second account and the allocation of values between the two accounts brought about by the lot line adjustment. He did not develop that theme at trial and the Complaint is silent on the matter. Defendant requests that the tax roll values be sustained.
 II. ANALYSIS
The issue in this case is the RMV of the subject property as of the January 1, 2007, assessment date. Plaintiff seeks a $114,250 overall reduction. *Page 3 
ORS 308.205(1)[1] defines real market value as:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
"The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct RMV. Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 *3 (Mar 26, 2003).
Plaintiff's evidence consists of four unadjusted sales, two of which occurred in 2002, a third in 2004, and the fourth in 2005. Plaintiff argues that the most recent of those sales (Ptf's Ex 2) sold in April 2005 for $297,500 and that the assessor has an RMV for the property of $356,470 in 2007 (2007-08 tax year). That sale is intended to show that the assessor's roll values exceed actual market value. However, that sale took place 21 months before the 2007 assessment date of January 1, 2007, and Plaintiff has not accounted for any change in value due to a change in market conditions. Another of Plaintiff's sales (Ptf's Ex 1) sold in February 2004 for $393,000. That sale included a home. However, not only is that sale remote in time (nearly three years before the applicable assessment date), but the purchaser tore down the existing home and divided the property into four separate lots. In other words, the buyer paid nearly $400,000 in 2004 for the land alone. Plaintiff's two other sales suffer from similar defects.
Defendant valued the two lots separately, presenting three comparable sales for the lot with the home, and three sales of unimproved lots to estimate the market value of Plaintiff's undeveloped lot. The sales in all cases are close in time to the January 1, 2007, assessment date, and are adjusted for differences between the comparable sales and the subject property. *Page 4 
Defendant estimates that the indicated market value of the improved property (Account R106526) is $440,000 (rounded), and that the market value of the bare land (Account R581367) is $215,875. The combined estimated RMV, by Defendant's calculations, is $655,875, which is nearly $142,000 above the current combined RMV of $514,250.
In evaluating the competing evidence, the court looks to the comparability of the different sales and the application of all necessary adjustments for differences. Adjustments are a key component in evaluating properties. According to Appraisal Institute, The Appraisal ofReal Estate 307 (13th ed 2008):
 "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences."
Informed buyers consider a number of factors relevant in an arm's-length transaction, including size, location, year of construction, and condition of the premises. See ORS 308.205. Valuing a property based on sales of comparable properties is "well accepted." SeeWard v. Dept. of Revenue, 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). However, "[b]ecause sales are seldom comparable in every detail, adjustments must be considered which reflect differences." Id.
(citations omitted). Raw, unrefined price information is not enough.
Plaintiff in this case made no adjustments to his sales. There is no way for the court to know how Plaintiff's unadjusted sales information supports his request for a $400,000 combined RMV. Defendant, on the other hand, made all the appropriate adjustments and arrived at a combined value in excess of the current RMV on the rolls. Defendant, however, has not asked for an increase in value.
Plaintiff has the burden of proof and must establish his case by a "preponderance" of the evidence. See ORS 305.427. A "[p]reponderance of the evidence means the greater weight of *Page 5 
evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *."Reed v. Dept. of Rev., 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has not met that statutory requirement. Accordingly, the values on the rolls must be sustained and Plaintiff's appeal denied.
 III. CONCLUSION
The court concludes that Plaintiff has failed to establish an error in the record assessment by a preponderance of the evidence. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's request for a reduction in the RMV of the subject property, identified for the 2007-08 tax year as Accounts R106526 and R581367, is denied because the Plaintiff has failed to establish his case by a preponderance of the evidence.
Dated this _____ day of February 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on February 17,2009. The Court filed and entered this document on February 17, 2009.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005.