DECISION
This matter is before the court on Plaintiffs' written request, filed September 8, 2009, that the court "make a decision on this case" without the benefit of trial or further court proceedings.
The appeal involves the real market value (RMV) of Plaintiffs' manufactured home and the land upon which it is sited, for the 2008-09 tax year. The property is identified in the assessor's records as Account 139380.
 I. STATEMENT OF FACTS
In their Complaint, Plaintiffs assert that the property has been over assessed, and they request a reduction in value to $63,000. The RMV of Plaintiffs' property was reduced by the county board of property tax appeals (board) from $159,305 to $144,845. The board reduced the RMV of Plaintiffs' land from $85,925 to $71,465, and sustained the RMV of Plaintiffs' manufactured home at $73,380. The assessed value (AV) of Plaintiffs' property (land and improvements) is $140,460.
The court held an initial case management conference August 3, 2009. Robie Vandiver (Vandiver) appeared for Plaintiffs. Defendant was represented by Stein Totland, a county appraiser. There was discussion about the relative values of stick-built homes compared to *Page 2 
manufactured homes, and discussion regarding a report by Global Insight[1] that Vandiver submitted with his Complaint concerning the decline in the median home price in Deschutes County. The parties agreed to meet and talk, and then participate in another teleconference with the court September 10, 2009. According to court records, Vandiver telephoned the court September 8, 2009, stating that he wanted to cancel the September 10 proceeding and have the court make a decision on the facts he has provided. That same day, the court received (by facsimile) a letter from Vandiver stating that "family matters" precluded him from participating in the scheduled September 10 proceeding and that "[he] would appreciate it if [the court] would make a decision on this case so we can go forward." (Ptfs' Ltr, Sept 8, 2009.) The court interprets the telephone call and written correspondence as a request by Vandiver for the court to make a decision on the information currently before the court.
 II. ANALYSIS
The issue here is the real market value of the subject property as of January 1, 2008. ORS 308.205(1)[2] defines real market value as:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
The court looks for "arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct RMV. Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at 3 (Mar 26, 2003). Valuing a property *Page 3 
based on sales of comparable properties is "well accepted." Ward v.Dept. of Revenue, 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). Additionally, the sale of the subject property, although not conclusive, is often "persuasive [evidence] of the market value." Kem v.Dept. of Rev., 267 Or 111, 114, 514 P2d 1335 (1973) (citations omitted). And, in appropriate circumstances, the income and cost approaches are useful in valuing property. OAR 150-308.205-(A)(2)(a).[3]
On the other hand, reports about median county-wide home prices is too generalized to provide any meaningful information of the type required to prove the value of a specific property on a specific date. The portion of the report Vandiver relies upon states that:
 "the median home price in the Bend metro area (defined as all of Deschutes County) was $276,900 in the third quarter * * * [a]nd * * * that price was 43 percent overvalued, despite dropping from $286,300 from the second quarter and $315,100 in the third quarter of 2007 — when the report found the Bend home prices were 62.3 percent overvalued."
(Ptfs' Compl at 5) (Emphasis added).
Vandiver insists that the Global Insight report demonstrates that the assessor's values are 62 percent above market. However, there at least two problems with that claim. First, as indicated above, the report addresses county-wide values, and does nothing to specifically address the value of Plaintiffs' home. Second, the report goes on to state that "[t]he study is a joint effort by HIS Global Insight and National City Corp., `to determine what home prices should be, accounting for differences in population density, relative income levels, interest rates, and historically observed market premiums or discounts[.]'" As such, the report has no relevance to the value of Plaintiffs' property, because it is not based on market transactions. The statutory definition of RMV for property tax purposes in this state is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction * * *." ORS 308.205(1). In other words, it is the likely selling price of a *Page 4 
property. If people are paying more for property than they should be paying, the assessor's market analysis reflects those higher prices.
Plaintiffs also submitted information on two stick-built homes. At the August 3, 2009, proceeding, Vandiver argued that those homes, built by a general contractor operating under the name Adair Homes Inc., had AVs that were much lower than the property's RMVs. As with the other evidence discussed above, such information does nothing to demonstrate that Plaintiffs' property is overvalued. This court has previously stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property."Freitag v. Dept. of Rev., 18 OTR 368, 374 (2005) (citing Poddar v. Dept.of Rev., 18 OTR 324, 332 (Sept 1, 2005, as corrected Sept 22, 2005)) (quoting Woods v. Dept. of Rev., 16 OTR 56, 59 (2002) (citation omitted)). Moreover, equity is not a requirement under Measure 50, a constitutional amendment adopted by the voters in Oregon in May of 1997. Or Const, Art XI, § 11(18).[4]
Plaintiffs have not provided any reliable market evidence showing that the property is overvalued. Plaintiffs, by statute, have the burden of proof. ORS 305.427. The statutory burden is a "preponderance" of the evidence. Id. Preponderance means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312
(1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v. Dept. ofRev., 310 Or 260, 265, 798 P2d 235 (1990). *Page 5 
 III. CONCLUSION
The court has reviewed the information submitted and considered the statements of the parties, and concluded that Plaintiffs have failed to establish an error in the record assessment for the 2008-09 tax year. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal must be denied.
Dated this ___ day October 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on October 1,2009. The Court filed and entered this document on October 1, 2009.
[1] According to the first of several pages from the Global Insight Internet webpage, the company is "[t]he Global Leader in economic and financial analysis, forecasting and market intelligence for more than 40 years." (Ptfs' Compl at 4.)
[2] All references to the Oregon Revised Statutes (ORS) are to 2007.
[3] References to the Oregon Administrative Rules (OAR) are to 2007.
[4] Subsection (18) of Article XI, section 11 (Measure 50) provides that "Section 32, Article I, and section 1, Article IX, of this Constitution, shall not apply to this section." Those sections require uniformity. Article I, Section 32 provides in relevant part: "all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Article IX, section 1, provides: "The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State." *Page 1