DECISION
Plaintiff appeals concerning certain real property assessments for the 2008-09 tax year. The property is identified in the Multnomah County tax records as Accounts R213233 and R330847.
A trial was held on February 11, 2010. W. Scott Phinney, Attorney at Law, represented Plaintiff. Testifying as witnesses were David Emami, owner, and Squire Smith, leasing agent. Karla K. Hartenberger, Multnomah County appraiser, presented Defendant's valuation evidence. Plaintiff's Exhibit 1 and Defendant's Exhibits A through N were offered and received by the court at trial. Parties submitted additional post-trial material. The record closed April 2, 2010.
 I. STATEMENT OF FACTS
The subject property is a commercial retail strip shopping and office center located at 9045 SW Barbur Boulevard in Portland, Oregon. The land totals 2.13 acres. Erected thereon, since about 1957, are buildings containing nearly 28,000 square feet of net rentable area. (Ptf's Ex 1 at 2; Def's Ex A.)
Plaintiff acquired the property in 1999 and paid $1,770,000. The intention at purchase was to add a new, second building. *Page 2 
Due to a subsequent legal challenge, those plans did not reach fruition. The owner testified he would have not purchased the property had he known of the limitations inherent at the site.
Near the January 1, 2008, assessment date, there was a mix of retail and office uses at the site. There were 13 separate office spaces and nine retail sites. Plaintiff's witnesses detailed the many problems with the property including nearly 45 percent vacancy, low rent rates, inadequate design and the dearth of windows in the office spaces. There were many functional problems as of January 1, 2008. The leasing agent spoke of "significant challenges in marketing the available space."
The parties primarily relied on competing income approaches to valuation.
As to those income approaches, Plaintiff utilized actual 2007 annual rent of $277,075 and $167,097 in expenses. (Ptf's Ex 1 at 29.) For 2008, the amounts were $239,578 income and $137, 261 expenses. (Id. at 30.) From this information, a pro forma statement was constructed. It concluded $364,840 effective gross income and $206,855 net operating income. (Id.) Using an overall capitalization rate of 10 percent, Plaintiff's indicated value was $2,068,550. (Id.) When compared with actual figures received in 2007 and 2008, the conclusion was reconciled to a total of $2 million. (Id. at 36.)
Defendant's initial income approach yielded a total amount almost double that of Plaintiff's — a concluded value of $3,825,500. (Def's Ex M.) This was based on a potential gross income of $559,379, effective gross income at $492,254, expenses of $157,521 and net operating income of $334,732. (Id.) To this an 8.75 percent overall capitalization rate was applied. This report contained errors at trial. It was later corrected in a filing on February 16, 2010. Those revised computations yielded a conclusion value of $3,049,600. *Page 3 
Three comparable sales were analyzed by Defendant's appraisal. (Def's Ex H.) They occurred in 2006, 2007 and 2009. The prices ranged from $1,639,700 to $5,750,000. No specific dollar adjustments for differences were applied in the comparison grid. (Id.)
 II. ANALYSIS
The issue in this case is the real market value (RMV) of the subject property as of the January 1, 2008, assessment date. ORS 308.205(1)[1]
defines real market value as:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
There are three common methods used to determine RMV: (1) the cost approach; (2) the sales-comparison or market comparable sales approach; and (3) the income approach. Allen v. Dept. of Rev.
(Allen), 17 OTR 248, 252 (2003). See also
OAR 150-308.205-(A)(2)(a) (stating that all three approaches to valuation of real property must be considered, although all three may not be applicable to the valuation of the subject property).[2]
In the sales comparison approach, "the court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property in order to reach a correct RMV.Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). In evaluating the evidence, the court looks to the comparability of the different sales and the application of all necessary adjustments for differences. Adjustments are a key component in evaluating properties. According to Appraisal Institute,The Appraisal of Real Estate 307 (13th ed 2008): *Page 4 
 "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences."
Informed buyers consider a number of factors relevant in an arm's-length transaction, including size, location, year of construction, and condition of the premises. See ORS 308.205. Valuing a property based on sales of comparable properties is "well accepted." See Ward v. Dept. of Revenue,293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). However, "[b]ecause sales are seldom comparable in every detail, adjustments must be considered which reflect differences."Id. (citations omitted). Raw, unrefined price information is not enough.
Here, Defendant offered no supportable adjustments to any of the sales cited. There was no consideration for any time adjustments, despite the wide range in sales dates. The industry averages were not persuasive nor adequately related to the subject.
The income approach "relies on the assumption that a willing investor will purchase a property for an amount that reflects the future income [that the property will produce]." Allen, 17 OTR at 253. The income approach determines the flow of income that a reasonable and knowledgeable buyer would anticipate if purchasing the subject property on the assessment date. Pacific Power Light Co. v. Dept. ofRevenue, 286 Or 529, 542, 596 P2d 912 (1979). The income approach should also consider the past earnings of the subject property and the rate of change of its income. Id. Plaintiff's appraisal calculations were all supported by substantial evidence and explained through credible testimony.
As to the competing income approaches, Plaintiff's evidence is superior. Defendant was clearly hampered in its trial preparation by the owner's refusal to provide rental and expense information in a timely pretrial fashion. That lack of cooperation is regrettable, but cannot serve as the justification for an excessive assessment. *Page 5 
The subject property is unique in layout and hampered by design difficulties and prospective tenant reluctance. Defendant's estimates of income are inflated; the expenses are too slight. Further, the appropriate capitalization rate by Plaintiff is drawn directly from the market and reflects the increased inherent risk at the subject property.
Plaintiff has the burden of proof and must establish its case by a "preponderance" of the evidence. See ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue,4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v. Dept. of Rev., 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has clearly met that statutory requirement. Accordingly, the values on the rolls must be reduced in accordance with Plaintiff's request.
 III. CONCLUSION
Plaintiff has proven an overvaluation as of January 1, 2008. Now, therefore,
IT IS THE DECISION OF THIS COURT that the total of the two accounts shall be reduced to $2 million, allocating $1,700,000 to land and $300,000 to improvements.
Dated this ___ day of September 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Jeffrey S. Mattsonon September 30, 2010. The Court filed and entered this documenton September 30, 2010.
[1] All references to the Oregon Revised Statutes (ORS) are to 2007.
[2] All references to the Oregon Administrative Rules (OAR) are to 2007.