DECISION
Plaintiff appeals the real market value of residential property identified as Account R201224 (subject property) for the 2009-10 tax year. A trial was held by telephone on January 25, 2011. Yevgeniy Petrusha (Petrusha), owner of Plaintiff and Oregon Registered Real Estate Agent, appeared and testified on behalf of Plaintiff. David Babcock (Babcock), Oregon Registered Appraiser, Multnomah County Division of Assessment, Recording, and Taxation, appeared and testified on behalf of Defendant.
 I. STATEMENT OF FACTS
The subject property is an undeveloped, 16,980 square feet (0.39 acre) lot located on SE Harold Street near 140th Place in Southeast Portland, Oregon, near the Scott's Bluff subdivision. (Ptf's Ex 1 at 3; Def's Ex A at 2.) "Off-site improvements in the street have been developed include[ing] water, sewer and electricity, paving, curb and sidewalk." (Def's Ex A at 3.) Petrusha testified that the subject property does not currently have a water or sewer connection and that the property is not buildable until the sidewalks and cul-de-sac have been extended, as required by the City of Portland. *Page 2 
Plaintiff did not provide an analysis of the highest and best use of the subject property. Defendant indicated that the "final development potential (highest and best use) is subject to city approval." (Def's Ex A at 3.) The subject property is located in a neighborhood "containing] a number of oversized vacant and improved parcels with higher and best use potential similar to the subject." (Def's Ex A at 2.) Petrusha testified that the subject property is 108.96 feet wide and is situated in the R5 zone. He testified that, due to the requirements of the R5 zone, the subject property could be divided into two lots at most. Babcock testified that the R5 zone "allows a minimum of 3,000 square feet and a maximum of 8,500 square feet per lot." (Def's Ex A at 3.) Thus, Babcock determined that the subject property can be developed into two to five lots.[1] (Id) He testified that division of the subject property into two to three lots is a conservative estimate.
The subject property was listed for $249,000 on February 10, 2009; the listing ran for 269 days. (Ptf's Ex 1 at 4-5; Def's Ex A at 3.) On November 6, 2009, Plaintiff "reduced price to $25,000 to $30,000 AS-IS Condition." (Ptf's Ex 1 at 5.)
Petrusha testified that he determined the subject property's value to be $57,500 because that was "the median sale price for individual lots in the SE Portland area for the year 2008/2009." (Ptf's Exs1 at 5; Ptf's Exs 4A-4L.) Petrusha identified 15 sales that he determined to be comparable to the subject property. (Ptf's Ex 4K.) The sales occurred between February 24, 2009, and December 28, 2009. (Ptf's Exs 4F-4J.) The sale prices ranged from $49,900 to $63,000. (Ptf's Ex 4K.) Petrusha included property size information for 12 of the 15 sales; the sizes ranged from 0.04 acres to 0.3 acres. (Id) Petrusha testified that most of the *Page 3 
properties that he identified have site improvements including water and sewer, but none have the additional building requirements as those imposed on the subject property by the City of Portland. There is no evidence that Petrusha made adjustments to the fifteen properties identified as comparable to the subject property. (See Ptf's Exs 4A-4L.) Petrusha did conclude an "Adjusted Price" for each comparable property, calculated by subtracting $81,315 in "Development Cost" from the sale price of each property. (Ptf's Exs 4F-4J.) Petrusha testified that he identified 13 or so sales involving oversized lots (lots larger than 5000 square feet), but he did not use those in his report because they all had improvements.
As additional evidence of value, Petrusha testified that the lots in the nearby "fully developed and improved" Scott's Bluff subdivision were listed in early 2010 for $65,000 per lot and ultimately sold on June 11, 2010, for $25,000 per lot. (Ptf's Ex 1 at 5; Ptf's Exs 10B, 10C.) Those lots are in the range of 3,000 to 4,999 square feet. (Ptf's Exs 10B, 10C.) Babcock testified that many recent sales have been distress sales and are not, therefore, arm's-length transactions.
Babcock looked for sales of vacant, unimproved properties with multiple lots, and identified three sales that he determined to be comparable.[2] He testified that the first sale was a .42 acre parcel zoned R5 that occurred on July 9, 2008, for an adjusted sale price of $160,000, or $80,000 per lot. The second sale occurred in December 2007, for an adjusted sale price of $162,000, or $82,000 per lot. The third sale was a bulk sale of four lots (.49 acres) that occurred in late October 2008, for an adjusted price of $300,000, or $75,000 per lot. Babcock testified that he considered the first two sales to be the better comparables; the third sale is less *Page 4 
comparable because it was a bulk sale involving four lots that had been platted and included site improvements.
Based on the comparables sales that he identified, Babcock testified that the adjusted sale prices ranged from $8.80 per square foot to $14.00 per square foot, the higher price representing the property with site improvements. He testified that the lot sizes ranged from approximately 5,000 to 9,000 square feet.
Petrusha conducted his own research regarding the sales identified by Babcock and concluded that none were comparable to the subject property. He testified that the first sale is not comparable because there are two houses on the property. Babcock disagreed that there were houses on the lot at the time that the property was sold. Petrusha testified that he could not locate the second comparable using the address provided by Babcock and believes the property is, in fact, a public park that he located near the address provided by Babcock.
Plaintiff requests a value of negative $23,815 for the subject property for the 2009-10 tax year. Petrusha determined that the value of the bare land was $57,500. He further concluded that the cost of developing the land and adding site improvements would be $81,315. Petrusha calculated his requested value of negative $23,815 by subtracting his projected development costs from the land value. (See Ptf's Ex 1 at 2, 5-6.) Defendant requests that the court sustain the roll value of $157,700.
 II. ANALYSIS
The issue in this case is the real market value of the subject property for the 2009-10 tax year. Real market value is defined as "the amount in cash that could reasonably be expected to *Page 5 
be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205.[3] The assessment date for the 2009-10 tax year was January 1, 2009. ORS 308.007; ORS 308.210.
There are three methods used to determine real market value: the cost approach, the income approach, and the sales comparison or market approach. Allen v. Dept. of Rev.,17 OTR 248, 252 (2003). All three approaches must be considered, although "it may be that all three approaches cannot be applied" for a particular property. OAR 150-308.205-(A)(2)(a). The parties only considered the comparable sales approach to value the subject property. "The comparable sales approach to valuation is well accepted * * * and, to the extent the property has a significant ascertainable market, it has been the preferred method * * *."Ward v. Dept. of Rev.,293 Or 506, 511, 650 P2d 923 (1982) (citations omitted).
"Under the sales comparison approach, the value of a property is derived by `comparing the subject property with similar properties, called comparable sales.' That comparison is based on many factors, and adjustments are made for any differences between the comparable sales and the subject property so that the appraiser can derive a value for the subject property." Magno v. Dept. of Rev.,19 OTR 51, 58 (2006) (citations omitted); see also
OAR 150-308.250-(A)(2)(c) ("In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used"). Thus, "[t]he court looks for arm's-length sale transactions of property similar in size, quality, age and location * * * in order to determine the [real market value]" of the subject property.Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). *Page 6 
Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue,4 OTR 302, 312 (1971). Plaintiff "must establish by competent evidence what the appropriate value of the property was as of the assessment date in question." Woods v. Dept. of Rev.
(Woods), 16 OTR 56, 59 (2002).
Petrusha identified 15 sales that he determined to be comparable to the subject property, only five of which occurred within six months of the assessment date, January 1, 2009. Unfortunately, he did not make any adjustments to those sales for the date of sale, size, and location. The only adjustment that Petrusha made to each of the sales that he identified was to subtract $81,315 in "Development Cost" from the sale price of each of those properties. Without adjustments for differences such as date of sale, size, and location, the court cannot rely on the sales identified by Petrusha as competent evidence of the value of the subject property as of January 1, 2009.
"[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." Woods, 16 OTR at 59, citingKing v. Dept. of Rev., 12 OTR 491 (1993). At trial, Petrusha testified at length regarding the problems that he had identified with Babcock's comparable sales. He testified that he did not consider Babcock's first sale comparable because there are houses on the lots. Petrusha could not locate Babcock's second comparable sale. The court cannot utilize that testimony to determine the real market value of the subject property for the 2009-10 tax year.
 III. CONCLUSION
After carefully considering the testimony and evidence, the court concludes that Plaintiff has failed to establish by a preponderance of the evidence that a reduction in the 2009-10 real *Page 7 
market value is warranted. Accordingly, the 2009-10 real market value established by the Multnomah County Assessor and affirmed by the Board of Property Tax Appeals is hereby sustained. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is denied.
Dated this ___ day of February 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on February 24, 2011. The Court filed and entered thisdocument on February 24, 2011.
[1] At trial, Babcock reviewed the applicable zoning code and determined that the minimum lot size is 1600 square feet and 30 feet wide; thus, Plaintiff could develop the subject property into eight lots.
[2] Defendant did not provide documentary evidence concerning the three sales; the only information that the court received was that provided through Babcock's verbal testimony at trial.
[3] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2007. *Page 1