IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GEORGE WITTEMYER,                           )
                                            )
                Plaintiff,                  )       TC-MD 110493C
                                            )
        v.                                  )
                                            )
MULTNOMAH COUNTY ASSESSOR,                  )
                                            )
                Defendant.                  )       **DECISION**

Plaintiff has appealed the real market value (RMV) of property identified in the

assessor's records as Account 316634, for the 2010-11 tax year.  Trial on the matter was held by

telephone on February 28, 2012.  Plaintiff appeared and testified on his own behalf. Also

testifying for Plaintiff were; Dixie Elliott (Elliott), a licensed real estate broker working for

Coldwell Banker at the time of the trial, and John Riddell (Riddell), of JKR Construction, who

was the contractor/builder of Plaintiff's home.  Defendant was represented by Jeff Brown

(Brown), a state certified appraiser with approximately 20 years of appraisal experience, the past

two years working for Defendant, and for 18 years prior to that as an independent fee appraiser.

Plaintiff submitted a "Legal Questions Discussion" (Trial Court Brief) prior to trial, and

Defendant timely submitted its Exhibit A.  Both of these items were admitted for trial.

Plaintiff appealed to this court the values of the subject property for the prior tax year

2009-10, and the court determined that the values on the rolls, initially set by the assessor and

then sustained by the county board of property tax appeals (Board), should be sustained.  *See*

*Wittemyer v. Multnomah County Assessor*, TC-MD No 100595C (Mar 2, 2012).  The court in

that decision determined that Plaintiff's home was 74 percent complete and had a total RMV of

/ / /

$694,570, with $215,500 allocated to the land and $479,070 to the partially completed home, and that there was $494,070 of "exception value" on the account.[1] (*Id*. at 3, 10, 12.) The maximum assessed value (MAV) and assessed value (AV) were affirmed at $380,730.

Trial of this matter for the 2010-11 tax year was heard days before the court's Decision for tax year 2009-10 was issued. The parties in the instant appeal request the following: Plaintiff has requested the total RMV of $447,756 in his Complaint and $526,000 in his pretrial written submissions and trial testimony; Defendant has requested that the court sustain the current total RMV of $790,440.

## I. STATEMENT OF FACTS

The subject property is a custom-built two-level home with five bedrooms and five full bathrooms, forced air heating and cooling, a two-story brick fireplace and three modular fireplaces. There is a 1,038 square foot garage underneath the two-story main living area. Access to the home is via a long tree-lined driveway that is mostly unpaved (dirt and gravel). There is a chain link gate at the entrance to the property.

The home sits on an approximately two acre, irregularly shaped lot on a hill in the Forest Park neighborhood of Northwest Portland. The parties agree that zoning restrictions limit the buildable footprint area to 5,000 square feet. The parties also agreed at trial that the home totals 4,300 square feet.

/ / /

/ / /

---

[1] The term "exception value" is used to describe changes in a property which increase its value over the prior tax year that result from new construction, reconstruction, major additions, remodeling, and as in this case, include the completion of a previously partially built home. See e.g., ORS 308.146(3)(a) (providing for an exception to the standard annual three percent increase in maximum assessed value provided in subsection (1) of that statute for "new property or new improvements to property;" ORS 308.149(5) (defining "new property or new improvements").

The home was completed in July 2009, and the home was thus 100 percent complete as of the January 1, 2010, assessment date for the present appeal of the 2010-11 tax year assessment. The value of the land and the value of the completed home are at issue in this case.

Defendant initially determined that the subject property's 2010-11 RMV was $790,440, with $215,500 allocated to the land and $574,940 to the structures. (Def's Ex A at 2.) Those were the original values certified on the assessment and tax rolls, and appearing on Plaintiff's tax year 2010-11 property tax statement which he received sometime in mid-October 2010. Those values included $149,510 of exception value (EV). (*Id.*) The AV certified on the rolls was $482,450. (Ptf's Compl at 4.)

Plaintiff appealed all of the values to the Board, and the Board sustained the values. (*Id*.) Plaintiff timely appealed the Board's decision to this court. In his Complaint, Plaintiff requests an RMV of $447,756, with $47,756 allocated to the land and $400,000 to the home. (*Id*. at 3.) At trial, as well as in his written materials submitted prior to trial, Plaintiff asserts that the RMV of the land is no more than $50,000 and that the RMV of the home should be the cost thereof, which was reportedly approximately $476,000. The sum of those two values is $526,000. Defendant requested that the court sustain the current $790,440 RMV on the assessment and tax rolls.

Plaintiff's first witness Elliott testified that "northwest Portland is my area of expertise," and that, having recently viewed the subject property, she noted several challenges of the site that adversely affected its value. Specifically, Elliott testified that the steep gravel approach, the "tear down" condition of the structures on the adjoining properties, the several easements, the low light due to the north slope orientation of the site, and the lack of similar properties nearby were all "challenges" that heavily influenced her opinion that the land should be valued at only

$50,000 to $75,000. Elliott further testified that between 2007 and 2009 there was a 25 percent to 28 percent decline in home values across the market. Elliot testified that she believed that properties in the higher price range did not sell well during this period because executives were not being transferred into the area. No documentary evidence was offered in support of her testimony.

Riddell, Plaintiff's builder, testified to several unfavorable characteristics of the subject property's terrain and location that contributed to a year of delays leading up to the permit acquisition stage of the building process. Riddell testified that the unfavorable characteristics included: a driveway that did not meet code requirements; three environmental overlays that restricted the buildable footprint; and the steep slope of the lot which made it at risk for landslides. Riddell testified that it cost $470,000 to build the house so that should be its value, with perhaps some reduction to account for the fact that the home is in Riddell's opinion overbuilt for the area, presumably due to the lower value structures adjacent to the subject property. However, Riddell also testified on cross-examination that he and Plaintiff are friends, and that Plaintiff helped to act as a purchaser for a home that Riddell was trying to purchase from a family member who refused to sell to Riddell. Riddell testified that he used lesser quality materials in the building process and made them look good, and that he only billed Plaintiff cost plus ten percent for profit.

Plaintiff was the last witness to testify in the presentation of his case in chief. Plaintiff testified that he made the following total payments for building the house: $468,458 to Riddell, plus $1,000 to Riddell for work on the home's septic system, and $5,800 for the architect's services. Plaintiff testified that he did not help with the construction, despite his frequent presence at the building site to witness the home building process.

Plaintiff testified that, in his opinion, it was inappropriate to compare his home to the comparables that Defendant chose because those comparables have access to public water, natural gas, high speed internet service, frontage on a paved public road, and no restrictive easements. As for the land RMV, Plaintiff testified that the property "is subject to an incurable depreciation caused by negative factors not on the property itself and that loss in value cannot be reversed by spending money on the [p]roperty." (Ptf's Compl at 3.) In support of his argument in his Complaint that the Portland real estate market was in decline at the time of valuation, Plaintiff referenced a February 1, 2012 article about the current (as of 2012) status of the entire Portland real estate market in the Oregonian newspaper. (Ptf's Trial Court Brief at 3.) Elliott also testified that, in her professional opinion, there was a reduction in the market of between 25 and 28 percent between 2007 and 2009.

Defendant's appraiser Brown submitted an appraisal report in which he indicates that he considered the three standard approaches to value (income, cost, and sales comparison), but determined that the sales comparison approach was the most reliable method for valuing the property and that that was the only approach he developed. (Def's Ex A at 4.) Under that approach, Brown compared four recent sales of "comparable * * * [properties that] bracket the subject property in all of the most critical areas; gross living area square footage, basement square footage, age and site size." (*Id*.) Brown's adjusted sales comparables range from a low of $783,900 to a high of $1,042,300. (*Id*. at 4-6.) Brown's appraisal adjusted the value of the comparables according to differences in condition, number of bathrooms, gross living area and basement square footages, garage spaces, and lot size. (*Id.* at 3-6.) Brown only applied an adjustment to the land on one of the four comparables, subtracting $100,000 from comparable #3 for lot size difference, that property being 5 acres in size compared to the subject at 2.09 acres.

(*Id.* at 3, 5.)  Brown testified that he did not inspect any of the four comparables that he used for the analysis, which is contrary to standard practice in appraising property.

II.    ANALYSIS

A.    *The law*

The issue in this case is the RMV of Plaintiff's home for the 2010-11 tax year.  The assessment date was January 1, 2010.  ORS 308.007; ORS 308.210.[2]

Oregon law defines RMV for property assessment and taxation purposes as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."  ORS 308.205(1).  The RMV of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue."  ORS 308.205(2).  OAR 150-308.205-(A)(2)(a) specifies the particular fashion for determining the RMV of property, and the methods are referred to as: (1) the cost approach; (2) the sales-comparison or market approach; and (3) the income approach.  *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003).  The parties must consider each approach to determine the RMV of the property, but the resulting RMV need not be the result of all three of those approaches. OAR 150-308.205-(A)(2)(a).

Although there are three recognized methods for valuing property, the sales comparison approach is typically the most appropriate for valuing residential property.  *Ward v. Dept. of Revenue,* 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted).  The sales comparison approach is defined as:

> "[t]he process of deriving a value indication for the subject property by comparing similar properties that have recently sold with the property being appraised,

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

identifying appropriate units of comparison, and making adjustments to the sale prices * * * of the comparable properties based on relevant, market-derived elements of comparison."

Appraisal Institute, *The Appraisal of Real Estate* 297 (13th ed 2008).

The sales comparison approach is typically most useful in determining the subject's value "where there are sufficient recent, reliable transactions to indicate value patterns or trends in the market." *Id.* at 300. However, for newly constructed property such as a subject in this case, the cost approach is a well accepted method for valuing a property, provided sufficient substantiated cost data is available and presented to the court. "The cost approach is particularly useful in valuing new or nearly new improvements." *Magno v. Dept. of Rev.*, 19 OTR 51, 55 (2006). "The [cost] approach is especially persuasive when land value is well supported and the improvements are new or suffer only minor depreciation and, therefore, approximate the ideal improvement that is the highest and best use of the land as though vacant." Appraisal Institute, *The Appraisal of Real Estate* 382 (13th ed 2008).

"[A]ctual costs are relevant and often persuasive, but not controlling. That is because the task is to determine market value and, although different contractors may build the same [property] for differing amounts, the completed [property] may sell for the same amount of money regardless of how much it cost to build."

*Murray v. Tillamook County Assessor*, TC-MD No 090154C, WL 602442 at *2 (Feb 19, 2010).

The party seeking affirmative relief has the burden of proof and, initially, the burden of going forward with the evidence. ORS 305.427. The burden of proof in the Oregon Tax Court is a "preponderance" of the evidence. *Id.* A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue,* 4 OTR 302, 312 (1971) (citation omitted). This court has previously noted that value is a range rather than an absolute. *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977). Moreover, the legislature has given this court jurisdiction "to determine the real market value or correct valuation on the basis of the

evidence before [it], without regard to the values pleaded by the parties." ORS 305.412. The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted); *Sahhali South v. Tillamook Cty. Assessor*, TC-MD 090541C at 6 (Dec 30, 2010).

This court has stated that "it is not enough for a taxpayer to criticize the county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002), citing *King v. Dept. of Rev.*, 12 OTR 491 (1993). Competent evidence includes "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, *and* testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Stearns v. Multnomah County Assessor*, TC-MD No 110252D, WL 877016 at *2 (Mar 13, 2012) (emphasis added). Further, "[t]estimony alone cannot stand in the place of competent evidence, such as an appraisal report and other documents * * * to determine the subject property's real market value as of the assessment date." *Id.*

B.    *The evidence*

1.    *Improvement RMV*

Plaintiff chose to testify to the actual costs of building his home to substantiate his argument that Defendant's appraisal overvalues the RMV of the subject property. Plaintiff testified to paying Riddell $468,458 for the construction and materials, $1,000 for additional work on the home's septic system, and $5,800 for the architect's services, for a total cost of approximately $476,000. However, none of the proffered sums were supported by documentary evidence of cost records such as canceled checks or bank records, nor were written bids or contracts provided to the court. No explanation was given for the lack of substantiation. When

arguing that even the cost methodology overvalues the house until the actual total costs are reduced by the house's lack of access amenities, like high speed internet and natural gas service, Plaintiff again failed to offer any documentary evidence to support his argument that the absence of these amenities should amount to specific reductions in the value of the subject property.

Plaintiff also identified items in Defendant's appraisal that he regarded as errors, such as the percentage of driveway that was paved and whether the house had a deck or a patio. Unfortunately, Plaintiff offered no testimony or evidence to quantify what change in value these possible inconsistencies in Defendant's appraisal might have on Defendant's ultimate value determinations, and the lack of evidence prevents the court from crediting Plaintiff's arguments for a reduction in value.

While not offered as a formulaic analysis of comparable property sales, Plaintiff made reference in his Trial Court Brief to a property located near the subject property, at 1252 NW Greenleaf Road. (Ptf's Trial Court Brief at 3.) Plaintiff asserted that the dramatic price reductions in the listing history even though "[the comparable property] lack[s] the negatives of [the subject property] and enjoy[s] all the positives that P[laintiff's] [l]and lacks" suggests that the subject property was overvalued in comparison. (*Id.*) This property adds little or nothing to the analysis of the subject property's RMV because the Greenleaf Road property sale occurred roughly a year after the assessment date. Furthermore, Plaintiff made no attempt to adjust for large physical differences in the characteristics of the comparable property.

Defendant produced an appraisal of the home by conducting a comparable sale analysis that involved four comparable properties located near the subject property. (Def's Ex 1 at 4.) To compensate for the different attributes of these comparables, Brown made adjustments for location and zoning of the properties. (*Id* at 3-4.) To mitigate the other differences in the

comparables relative to the subject property, Brown utilized a three-layer regression analysis, individual matched pair sales analysis, and his own professional experience. (*Id*.) Brown's analysis may not fully quantify the unique negative attributes of the home's location that Plaintiff raised in his case in chief, and therefore may result in a slightly higher RMV than the testimony offered by Plaintiff's witnesses seemingly warrants. Nevertheless, Plaintiff did not produce substantial, competent evidence, in the form of an appraisal or documentary market evidence, that would carry his burden of proof. In the absence of competent evidence from Plaintiff, and finding Defendant's valuation process generally credible, the court finds that the RMV of the home should be sustained at $574,940.

2.      *Land RMV*

Elliott testified on Plaintiff's behalf regarding several challenges that lower the value of the subject property, including the steep terrain of the lot, the "tear-down" condition of the neighboring structures, the difficult-to-navigate driveway, and the property's low availability of sun light. Elliott also testified that the dissimilar properties, those of lower quality and condition that comprise most of the neighborhood, act to lower the subject property's value. As a result, Elliott recommended the land be valued at no more than $50,000 to $75,000, less than half of the $215,500 land value affirmed by the Board. Despite offering expert testimony about the characteristics of the subject property and the market conditions around the time of assessment, Elliott's professional opinions were not supported by any documentary evidence.

Riddell's testimony also underscored the defects of the land. Riddell testified that the unfavorable characteristics included a driveway that did not meet code requirements, three environmental overlays that restricted the buildable footprint, and the steep slope of the lot which made it at risk for landslides. Although Riddell testified that it cost $470,000 to build the house

and therefore that amount should be its value after a reduction for overbuilding, Riddell never offered a final valuation figure. He also never proposed a formal methodology to allow the court to calculate a value for the land, nor did he purport to have qualifications that could have substantiated his opinion of value. During cross-examination, Riddell also testified that he and Plaintiff are friends, and that Plaintiff helped him purchase a home by acting as the buyer of a home that Riddell was trying to purchase from a family member who refused to sell to Riddell, with Plaintiff then "selling" the home to Riddell. Riddell's business dealings and personal friendship with Plaintiff further undermine the objectivity of his testimony, and the court gives it little weight beyond his observations about the difficult circumstance under which the home was built.

Although the court finds portions of the testimony from Elliott and Riddell persuasive, the court received no evidence of market data quantifying the impact of the defects on the value of the land. Plaintiff's conspicuous lack of market data leaves the court with inconclusive proof to warrant an adjustment to an otherwise credible appraisal conducted by Defendant. It is not disputed that Elliott is an experienced real estate broker and that Riddell is an experienced builder; rather, as referenced above, expert testimony lacking the support of relevant and reliable documentary evidence does not rise to the level of a preponderance of the evidence necessary to carry Plaintiff's burden of proof. *Stearns*, TC-MD No 110252D, WL 877016 at *2 (March 13, 2012).

Based on the trial record and the exhibits submitted, the court finds Plaintiff failed to meet his burden of proof. Accordingly, the court finds the $215,500 RMV on the rolls for Plaintiff's land should be sustained.

/ / /

### III.    CONCLUSION

After carefully considering the matter, the court concludes that Plaintiff has failed to carry his burden of proof, and that the values on the rolls will be sustained.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of July 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on July 24, 2012.  The Court filed and entered this document on July 24, 2012.*