IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

RHONDA PINHEIRO,                          )
                                          )
            Plaintiff,                    )     TC-MD 111160N
                                          )
      v.                                  )
                                          )
YAMHILL COUNTY ASSESSOR,                  )
                                          )
            Defendant,                    )
                                          )
      and                                 )
                                          )
DEPARTMENT OF REVENUE,                    )
State of Oregon,                          )
                                          )
            Defendant-Intervenor.         )     **DECISION**

Plaintiff filed her Complaint on October 27, 2011, challenging Defendant-Intervenor's

Account Inactivation notice, dated September 13, 2011. (Ptf's Compl at 2.) Defendant-

Intervenor denied Plaintiff's recertification application for property identified as Account 519775

(subject property) in the senior and disabled property tax deferral program (deferral program)

because "[t]he real market value of [the subject] property exceeds the limit for [Plaintiff's]

county." (*Id.*) Plaintiff challenges the 2010-11 real market value of the subject property, which

was used to determine her eligibility for participation in the deferral program for the 2011-12 tax

year. A trial was held in the Tax Courtroom in Salem, Oregon on September 6, 2012. Adrianne

Almond (Almond), an Oregon licensed real estate broker, appeared and testified on behalf of

Plaintiff. Brad Erland (Erland), Registered Appraiser I, and Jeff Ivie, Chief Appraiser, appeared

on behalf of Defendant. Erland testified on behalf of Defendant. Kathy M. Stevens, Operations

& Policy Analyst, appeared on behalf of Defendant-Intervenor. Plaintiff's Exhibits 1 through 5

and Defendant's Exhibits A and Rebuttal Exhibits B and C were received without objection.

DECISION  TC-MD 111160N                                                              1

## I. STATEMENT OF FACTS

The subject property is a one-story ranch style house on a 7,859-square-foot lot located in Newberg, Oregon. (Def's Ex A at 2, 10.) The subject property house, constructed in 2001, is 1,828 square-feet with three bedrooms and two bathrooms. (*Id.* at 2.) It includes certain "ADA features such as, lower counters, wider doorway, and handrails." (*Id.* at 5.) Almond testified that holes were cut in the sheetrock in one of the subject property bathrooms for accessibility. The subject property also includes a "two-car finished attached garage consisting of 587 square feet, concrete back patio with built in concrete pool and whirlpool spa." (*Id.* at 5.)

Almond testified concerning her extensive experience as a real estate broker in the Willamette Valley. She provided three comparative market analyses (CMAs) for the subject property, one for 2010, 2011, and 2012. (Ptf's Exs 2, 3, 4.) Almond testified that she prepared the 2010 CMA shortly after Plaintiff received Defendant-Intervenor's Account Inactivation notice in September 2011. Almond testified that she is engaged to Plaintiff's son, but her relationship to Plaintiff did not influence her CMAs. She testified that she would have provided the same analyses to any potential seller.

In her 2010 CMA, Almond wrote: "During 2010, market values in the Newberg area were down 25% from their peak in 2007 with an average sales price of $257,032 from the average sales price of $342,302 in 2007." (Ptf's Ex 2 at 3.) "Between the dates of May 1, 2010, and November 30, 2010, approximately 167 properties sold in Newberg, 36 of which were direct competitors with a median sold price of $253,950. * * * [I]t is my professional opinion that the subject property would have sold for no more than $229,900, with a more likely sales price of approximately $222,000 once any repairs and concessions were included, also taking into

/ / /

account the amount of distressed properties which were in direct competition with the subject during the noted years." (*Id.*)

Almond identified eight comparable sales in Newberg that occurred between September and November 2010. (Ptf's Ex 2 at 4-8.) The unadjusted sales prices of Almond's comparable sales ranged from $214,900 to $260,000. (*Id.* at 6-8.) Almond adjusted seven of her eight sales downward with adjusted prices ranging from $203,450 to $238,250. (*Id.*) Almond testified that, prior to trial, she was unaware that January 1, 2010, was the assessment date for the 2010-11 tax year and, as a result, did not make time adjustments to her sales. She testified that properties that sold in November 2010 would likely have sold for more in January 2010. Almond made adjustments for improvement size, year built, number of bathrooms, air conditioning, and "concessions." (*Id.*) She testified that "concessions" included, for example, favorable loans and financing. Almond concluded a "recommended list price" of $224,900 for the subject property for 2010. (*Id.* at 10.)

Defendant questioned Almond's selection of comparable sales, noting that seven of her eight sales were below the median sale price of $253,950 for Newberg in 2010. Almond's 2010 CMA states that the average number of days on the market in 2010 was 175 and the median was 140. (Ptf's Ex 2 at 10.) Defendant noted that six of Almond's eight comparable sales were on the market for fewer than 175 days. (*See id.* at 6-8.) Erland testified that the county's ratio study for the "Newberg/Dundee Market Area" revealed a nine percent decline in sales prices from January 1, 2010, to January 1, 2011. (Def's Rebuttal Ex B.) Defendant further noted that six of Almond's comparable sales were two-story houses, whereas the subject property is a one-story house; she did not make an adjustment for number of stories.

/ / /

Almond testified that several of her comparable sales were distressed sales, but could not recall which. Erland testified that Almond's sales 2, 3, and 4 were distressed sales; those properties sold for $221,650, $225,000, and $233,000, respectively, in September and October 2010. (Ptf's Ex 2 at 6-7.) Almond determined adjusted sale prices of $217,200, $207,150, and $203,450, respectively, for her sales 2, 3, and 4. (*Id.*) Almond testified that buyers consider distressed sales because they want to get a good deal and pay no more than market value. She testified that the subject property would have been a distressed sale if it sold in 2010.

Erland testified that he inspected the subject property on May 9, 2012, and completed a retrospective appraisal as of January 1, 2010. (*See* Def's Ex A at 5.) He testified that, following his inspection, he changed the subject property quality class from "5+" to "4+" based on his view of the interior. Erland stated in his report that "[t]he overall physical condition [of the subject property] is average with some expectation of maintenance being required on shorter-lived items such as; carpet, appliances and paint." (*Id.* at 2.)

Erland testified that he identified six comparable sales, all of which are single-level houses "built of similar quality and in similar condition to that of the subject" property and located in Newberg. (*See* Def's Ex A at 8, 10-11, 14.) He did not use any "distressed sales" because "sales data in Yamhill County for January 1, 2010 indicate[d] that the typical distressed sale [was] selling at a substantially lower price than that of an arm's length transaction." (*Id.* at 8.) Erland's comparable sales occurred between February 2009 and February 2010. (*Id.* at 10-11.) He testified that he made time adjustments to his comparable sales using an eight percent downward trend from January 1, 2009, to January 1, 2010. In addition to time, Erland adjusted his sales for gross living area ($50 per square-foot); "heating/cooling" ($500 for air conditioning

/ / /

and $1,000 for forced air); number of fireplaces ($1,000 per fireplace); and "other" amenities, such as a pool or shed (four percent of selling price for a "pool/spa"). (*Id.* at 10-11, 19.)

The unadjusted prices of Erland's comparable sales ranged from $245,000 to $297,500; the adjusted sale prices ranged from $264,500 to $294,000. (Def's Ex A at 10-11.) Erland's net adjustments ranged from -1.18 to 7.96 percent and his gross adjustments ranged from 1.51 to 13.70 percent. (*Id.*) He testified that his sale 4 was his best comparable sale; sale 4 is located 0.07 miles from the subject property and required only a 1.51 percent gross adjustment for an adjusted sale price of $294,000. (*See id.* at 11.) Erland testified that he gave 50 percent weight to sale 4 and 10 percent weight to the other comparable sales and concluded real market value of $283,000 for the subject property as of January 1, 2010. (*Id.* at 14.)

Almond and Erland disagreed as to the appropriate adjustment for the subject property swimming pool and spa. Almond made a $10,000 downward adjustment to each of her comparable sales to adjust for the subject property pool and in-ground spa. (Ptf's Ex 2 at 6-8.) She testified that, in her experience, swimming pools do not add value and limit the market for a property. Almond testified that, because the subject property is "ADA-compliant," it is geared toward the elderly and most potential buyers in that market consider a swimming pool to be a liability. She testified that Plaintiff installed the subject property pool and in-ground spa because she uses it for physical therapy. Erland testified that he completed a paired sales analysis on the influence of swimming pools on sale prices. (Def's Rebuttal Ex C.) Erland's analysis of two sets of paired sales supported an upward adjustment of 3.50 to 4.37 percent of sale price for properties with a pool. (*Id.* at 2-3.) Based on that analysis, he determined an upward adjustment of 4.00 percent for swimming pools. (*Id.* at 3.)

/ / /

Erland testified that he also completed a cost approach analysis of the subject property's real market value as of January 1, 2010. (*See* Def's Ex A at 16-17.) He testified that he used the Department of Revenue's 2005 cost factor book and determined a depreciated replacement cost of $138,164 for the subject property improvements. (*Id.* at 16.) Adding total land value of $97,294, including "land," "on site developments," and "landscaping," Erland determined a total real market value of $285,197 under the cost approach. (*Id.* at 17.) He gave "minimal weight" to the cost approach "due to difficulties in estimating depreciation" and concluded a real market value of $283,000 for the subject property as of January 1, 2010. (*Id.* at 18.)

The 2010-11 roll real market value of the subject property was $363,988. (Def-Inv's Ans at 2.) Erland testified that the 2010-11 maximum assessed value of the subject property was $291,457. The 2010-11 "county median RMV" for Yamhill County was $203,694. (*Id.*) As of April 15, 2011, Plaintiff had "owned and lived in" the subject property for 10 years. (*Id.*) Thus, the subject property is ineligible for participation in the deferral program for the 2011-12 tax year if the 2010-11 real market value of the subject property "is equal to or greater than * * * 120 percent of county median RMV." (*Id.* at 1 (citing ORS 311.670(2)(c) (2011)).) 120 percent of the 2010-11 Yamhill "county median RMV" is $244,433. (*Id.* at 2.) Plaintiff requests that the 2010-11 real market value of the subject property be reduced to $222,000 based on Almond's 2010 CMA. Defendant requests that the 2010-11 real market value of the subject property be reduced to $283,000 based on Erland's appraisal.

## II. ANALYSIS

The first issue before the court is the real market value of the subject property for the 2010-11 tax year. The court has jurisdiction to consider the 2010-11 real market value of the

subject property under ORS 305.288(1),[1] which allows the court to reduce the value of property

"for the current tax year or for either of the two tax years immediately preceding the current tax

year, or for any or all of those tax years, if" there is an allegation of an error in value of at least

20 percent and it is attributable to property that was used "primarily as a dwelling."

The second issue is whether Plaintiff qualifies for participation in the deferral program

for the 2011-12 tax year.  ORS 311.670(2) (2011).  Plaintiff has the burden of proof and must

establish her case by a preponderance of the evidence.  ORS 305.427.  A "[p]reponderance of the

evidence means the greater weight of evidence, the more convincing evidence."  *Feves v. Dept.*

*of Revenue*, 4 OTR 302, 312 (1971).  "[I]f the evidence is inconclusive or unpersuasive, the

taxpayer will have failed to meet his burden of proof * * *."  *Reed v. Dept. of Rev.,* 310 Or 260,

265, 798 P2d 235 (1990).  "[T]he court has jurisdiction to determine the real market value or

correct valuation on the basis of the evidence before the court, without regard to the values

pleaded by the parties."  ORS 305.412.

"Real market value is the standard used throughout the ad valorem statutes except for

special assessments."  *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No

020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted)).  Real market value is defined

in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash
> that could reasonably be expected to be paid by an informed buyer to an informed
> seller, each acting without compulsion in an arm's-length transaction occurring as
> of the assessment date for the tax year."

The assessment date for the 2010-11 tax year was January 1, 2010.  ORS 308.007; ORS 308.210.

/ / /

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

Both parties placed primary weight on the sales comparison approach. Erland also determined a value under the cost approach, but gave that approach "minimal weight." The sales comparison approach is "well accepted * * * and, to the extent the property has a significant ascertainable market, it has been the preferred method[.]" *Ward v. Dept. of Revenue* (*Ward*), 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). The subject property is a residential property. Both Almond and Erland identified numerous comparable sales in Newberg in 2009 and 2010. Thus, the court finds that, as of January 1, 2010, the subject property had an "ascertainable market" and the sales comparison approach provides persuasive value evidence.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosure, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."

OAR 150-308.205-(A)(2)(c). The court looks at arm's-length sales transactions of similar property to determine a correct real market value. *Richardson*, TC-MD No 020869D. "Because sales are seldom comparable in every detail, adjustments must be considered which reflect differences. If the differences and adjustment are too great, the sale will not be considered comparable[.]" *Ward*, 293 Or at 511 (citations omitted).

Based on the sales comparison approach, Almond determined a 2010-11 real market value of $224,900, whereas Erland concluded $283,000. For several reasons discussed below, the court finds Erland's analysis and value conclusion more persuasive. First, three of Almond's eight comparable sales were "distressed sales" and Almond did not make "market-based adjustments" for those "nontypical market condition[s]" as required by OAR 150-308.205-(A)(2)(c). Second, Almond's comparable sales all occurred between September and November 2010, but she did not make time adjustments to reflect the January 1, 2010, assessment date. Erland testified and provided evidence that sale prices in Newberg declined nine percent from January 1, 2010, to January 1, 2011, suggesting that Almond's sales should have been adjusted upward for time. Finally, Almond adjusted all of her sales downward by $10,000 based on her determination that the subject property swimming pool and in-ground spa would be considered a liability by potential buyers. Almond provided an explanation for her adjustment, but failed to offer any market-based evidence supporting her $10,000 downward adjustment. By contrast, Erland provided a paired sales analysis supporting an upward adjustment of 4.00 percent for the subject property swimming pool and in-ground spa.

The court found Erland's sales comparison approach analysis and conclusion persuasive for several reasons. First, Erland identified sales located no more than two miles from the subject property that occurred close to the January 1, 2010, assessment date. (*See* Def's Ex A at 10-11.) Second, Erland made market-based adjustments for differences including time and amenities and he provided evidence in support of those adjustments. Finally, Erland's net and gross adjustments were all relatively small, suggesting that his comparable sales were sufficiently similar to the subject property to provide reliable evidence of its real market value. / / /

For those reasons, the court is persuaded that the 2010-11 real market value of the subject property was $283,000, as determined by Erland.

The second issue is whether Plaintiff qualifies for participation in the deferral program for the 2011-12 tax year under ORS 311.670(2) (2011). Plaintiff certified to Defendant-Intervenor that, as of April 15, 2011, she had "owned and lived in" the subject property for 10 years. (Def- Inv's Ans at 2.) Thus, the subject property is ineligible for participation in the deferral program for the 2011-12 tax year if the 2010-11 real market value of the subject property "is equal to or greater than * * * 120 percent of county median RMV." ORS 311.670(2)(c) (2011). The 2010-11 "county median RMV" for Yamhill County was $203,694; 120 percent of the 2010-11 "county median RMV" is $244,433. (Def- Inv's Ans at 1, 2.) Based on the court's finding that the 2010-11 real market value of the subject property was $283,000, Plaintiff does not qualify for participation in the deferral program for the 2011-12 tax year.

III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that the 2010-11 real market value of the subject property was $283,000, as determined by Defendant's appraiser, Erland. The court further finds that Plaintiff does not qualify for participation in the deferral program under ORS 311.670(2)(c) (2011) because the 2010-11 real market value of the subject property is greater than "120 percent of county median RMV." Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that the real market value of property identified as Account 519775 was $283,000 for the 2010-11 tax year.

IT IS FURTHER DECIDED that Plaintiff does not qualify for participation in the senior and disabled property tax deferral program for the 2011-12 tax year under ORS 311.670(2)(c) (2011).

Dated this ___ day of November 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on November 16, 2012. The Court filed and entered this document on November 16, 2012.*