IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MARTIN STANWOOD,                          )
                                          )
             Plaintiff,                   )     TC-MD 120222N
                                          )
      v.                                  )
                                          )
MULTNOMAH COUNTY ASSESSOR,                )
                                          )
             Defendant.                   )     **DECISION**

Plaintiff appeals the real market value of property identified as Account R216876 for the

2011-12 tax year. A telephone trial was held on October 3, 2012. Plaintiff appeared and

testified on his own behalf. Jeff Brown, Residential Appeals Lead Appraiser, appeared on behalf

of Defendant. Stephanie McQuown (McQuown) Registered Appraiser III, testified on behalf of

Defendant. On September 24, 2012, Plaintiff filed a 14-page document with the court. That

document was not labeled in accordance with Tax Court Rule-Magistrate Division (TCR-MD)

10. On September 25, 2012, Plaintiff filed a "List of Marked Exhibits" with the court, including

Exhibits 1 through 9. Defendant objected to Plaintiff's document, filed September 24, 2012,

because it was not labeled as "exhibits" and it was not previously clear to Defendant that

Plaintiff intended to rely on that document as an exhibit for trial. Defendant objected to

Plaintiff's Exhibits, filed September 25, 2012, because they were not timely exchanged under

TCR-MD 10, which requires that exhibits be "postmarked at least 14 days before the trial date or

physically received at least 10 days before the trial date."

The court allowed Plaintiff's document, filed September 24, 2012, but excluded

Plaintiff's Exhibits 1 through 9, filed September 25, 2012, under TCR-MD 10 C. The court will

refer to Plaintiff's document, filed September 24, 2012, as Exhibit 1. The court allowed

Defendant's Exhibit A over Plaintiff's objection that it was "inaccurate, flawed, one sided, and in [his] opinion illegal." (Ptf's Objection to Def's Ex A (appraisal report).) Plaintiff's Objection to Defendant's Exhibit A relates to the weight that should be given to Defendant's Exhibit A.

## I. STATEMENT OF FACTS

The subject property is a three-bedroom, one-bathroom house with 1,372 square feet of living area situated on a 5,000 square foot lot. (Def's Ex A at 4-5, 10.) McQuown testified that the subject property improvement is a "ranch style" home built in 1968. (*See* Def's Ex A at 10.) Plaintiff testified that the subject property is in the Johnson Creek floodplain. (*See* Ptf's Ex 1 at 8.)

> "The subject property was purchased in June of 2010 for $172,378 as a trustee's estate deed. It was subsequently listed for $130,000 in August of 2010. The list price was subsequently lowered to $109,900 in November of 2010 prior to being purchased at an auction for foreclosed homes on 01/25/11 for $68,250."

(Def's Ex A at 5.) McQuown did not rely on the subject property purchase price as reliable evidence of its real market value, noting that the "marketing history strongly indicates that the price drop of November 2010 to $109,900 showed the owner had become distressed due to a pending foreclosure." (*Id.*) The subject property sale in 2010 was "as is." (*Id.*)

Plaintiff testified that he was the winning bidder at the subject property auction in November 2010 with a bid of $56,000.[1] He testified that the seller would not accept that bid and asked for a higher offer. Plaintiff testified that, at the request of the seller, he offered $65,000 and that was accepted. The sale closed in January 2011 at $68,250, of which $3,250 represented the "finder's fee." (*See* Ptf's Ex 1 at 12; Def's Ex A at 5.)

/ / /

---

[1] Plaintiff's Exhibit 1 states the bid was $56,000 and Plaintiff reported that figure during the case management conference held in this matter. (Ptf's Ex 1 at 8.) At trial, Plaintiff testified that the bid was $58,000.

Plaintiff testified that, as of 2010 and early 2011, the real estate market was "upside down." He testified that "most" sales in Portland were distressed sales at that time. (*See* Ptf's Ex 1 at 4 (article reporting 4,258 foreclosure filings in Multnomah County in 2011).) Plaintiff acknowledged that the purchase of real estate through an auction sale may not be an arm's-length transaction because there is no negotiation between the buyer and seller. However, Plaintiff argues that his purchase of the subject property was arm's-length because the seller did not accept his bid and asked him to submit a higher bid; thus, they negotiated.

McQuown completed a study on the differences between "bank foreclosure (REO)" sales as compared with "non-distressed/non-duress sales" from November 1, 2009, to January 1, 2010, and from November 1, 2010, to January 1, 2011. (Def's Ex A at 7.) McQuown testified that a "significant" difference in sale price existed between those two categories of properties: from "11-01-09 to 01-31-10," the median sale price for "REO/Short/Distressed" sales was $155,000 and the median sale price for "Non-Distressed or Duress sales" was $180,150; from "11-01-10 to 01-31-11," the median sale price for "REO/Short/Distressed" sales was $115,450 and the median sale price for "Non-Distressed or Duress sales" was $182,950. (*Id.*)

McQuown testified that she relied on the sales comparison approach and considered three arm's-length sales within two miles of the subject property. (Def's Ex A at 5-6, 10.) The unadjusted sale prices ranged from $109,000 to $196,500. (*Id.* at 10.) McQuown made adjustments for differences in concessions, date of sale, location, site size, condition, gross living area, heating/cooling, and garage. (*Id.*) She determined a real market value of $128,000 based on her comparable sales analysis. (*Id.* at 9.) Plaintiff questioned McQuown about the effect on the subject property's location in the Johnson Creek floodplain. She testified that she considered whether the market recognizes a difference in value for properties located in a floodplain and

found that it reduces the value of property by about nine percent. McQuown testified that, for the subject property, a nine percent adjustment to her value conclusion is $116,480, which supports the roll real market value of $115,880. As a result, she considers the roll value to be supported and asks that it be sustained.

Plaintiff testified that he disagrees that McQuown's comparable sales are truly comparable to the subject property, stating that they "are not in the same league." He testified that she should have considered as comparable Plaintiff's purchase of a property located on Holgate Boulevard for $126,000 in December 2010. (Ptf's Ex 1 at 13-14.) Plaintiff testified that the Holgate property is superior in quality to the subject property. He testified that McQuown's value conclusion of $128,000 is "way" off, noting that the subject property was listed at $109,900 beginning in November 2010 and did not sell for that price.

The 2011-12 roll real market value of the subject property is $115,880 and the 2011-12 maximum assessed value is $99,850. (Ptf's Compl at 2.) In his Complaint, Plaintiff requested a real market value of $56,000. At trial, he suggested the parties "split the difference" and agree to a value of $85,000 or $90,000. Defendant requests that the roll real market value be sustained.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2011-12 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash
> that could reasonably be expected to be paid by an informed buyer to an informed

seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[2]

The assessment date for the 2011-12 tax year was January 1, 2011.  ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]"  ORS 308.205(2).  There are three methods of valuation that are used to determine real market value: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach.  *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003).  All three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property.  OAR 150-308.205-(A)(2)(a).  The approach of valuation to be used is a question of fact to be determined on the record.  *Pacific Power and Light Co. v. Dept. of Rev.*, 286 Or 529, 533 (1979).  Plaintiff relies primarily on his purchase price, although both parties considered the sales comparison approach to be applicable.

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence.  ORS 305.427.  A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence."  *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).  "[I]t is not enough for a taxpayer to criticize a county's position.  Taxpayers must provide competent evidence of the [real market value] of their property."  *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002).  Competent evidence includes, "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers."  *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (Mar 13, 2012).  "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of

---

[2] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff did not submit an appraisal report, relying instead on his purchase of the subject property in late 2010. The lack of an appraisal is not fatal because "[t]he various approaches to valuation * * * are only vehicles used to determine the ultimate fact – market value." *Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973).

> "A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value."

*Id*. (citations omitted). Plaintiff submitted the winning bid for the subject property in November 2010, and the sale closed in January 2011, making it "recent" as of January 1, 2011. The question becomes whether the sale was a "voluntary, arm's length transaction."

Plaintiff purchased the subject property through an auction sale. "This court has made a distinction between the sale of bank owned properties using a multiple listing service and an auction." *Godzilla Investment LLC v. Multnomah County Assessor*, TC-MD No 120199D, WL 3291789 at *4 (Aug 13, 2012). "An auction is defined as a 'sale of property to the highest bidder.' An auction eliminates the negotiation between the buyer and seller and requires buyers to negotiate with each other, generally leaving the seller out of the negotiation process." *Schnabel v. Clatsop County Assessor*, TC-MD No 100618D, WL 646678 at *2 (Feb 22, 2011), *citing Webster's Third Int'l Dictionary* 142 (unabridged ed 2002). Thus, an auction sale is not an "arm's-length transaction" under ORS 308.205 and is not necessarily indicative of real market value.

/ / /

Plaintiff argues that his purchase of the subject property was not through an auction sale because the seller rejected his winning bid and requested that he submit a higher bid. Plaintiff argues that his purchase of the subject property for $65,000 was, therefore, an arm's length transaction. Defendant disagrees and considers the sale of the subject property to be a distress sale as indicated by the "pending foreclosure" and "price drop" to $109,900 in November 2010.

"This court has been reluctant to consider 'foreclosure' sales as 'arm's-length transactions' because such sales 'may well involve an element of compulsion on the part of the seller.' " *Voronaeff v. Crook County Assessor*, TC-MD No 110361C, 1426847 at *4 (Apr 25, 2012) (citations omitted). "There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value." *Kryl v. Lane County Assessor*, TC-MD No 100192B, WL 1197444 at *2 (Mar 30, 2011). However, property purchased through foreclosure may be "a voluntary *bona fide* arm's-length transaction between a knowledgeable and willing buyer and a willing seller." *Ward v. Dept. of Revenue*, 293 Or 506, 508, 650 P2d 923 (1982) (emphasis in original). "There are narrow exceptions determined on a case-by-case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk v. Lane County Assessor*, TC-MD No 110308, WL 6182028 at *5 (Dec 12, 2011). "[W]here the majority of sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.* (*Morrow*), 10 OTR 146, 148 (1985).

Plaintiff testified that "most" sales in Portland in late 2010 and early 2011 were distressed sales; it was "typical" of the market. However, Plaintiff did not present persuasive evidence in support of his testimony. By contrast, Defendant identified comparable, arm's length sales that

occurred close to the assessment date. In determining the reliability of a bank sale, this court has considered whether the property was adequately marketed. (*See, e.g.*, *Greene v. Benton County Assessor*, TC-MD No 110687N, WL 2786039 (Jul 10, 2012.) Here, no evidence was presented concerning efforts to market the subject property prior to Plaintiff's purchase. However, the relatively short time from the first listing of the subject property in August 2010 to the auction in November 2010 suggests that the subject property was not adequately exposed to the market prior to sale.

Plaintiff has failed to meet his burden of proof with respect to his requested reduction in real market value based on his purchase of the subject property. Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. McQuown's analysis of comparable sales, adjusted for the subject property's location in a floodplain, support the 2011-12 roll real market value of $115,880.

### III. CONCLUSION

After carefully considering the evidence and testimony presented, the court finds that Plaintiff failed to carry his burden of proof and the 2011-12 roll real market value of $115,880 is supported by the evidence presented. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of November 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on November 30, 2012. The Court filed and entered this document on November 30, 2012.*